1  **Louis J. Esbin, Esq. (Cal. Bar No. 119705)**
   **The Law Offices of Louis J. Esbin**
2  **25129 The Old Road, Suite 114, Stevenson Ranch, CA 91381**
   **Tel: (661) 254-5050 | Facsimile (661) 254-5252 | Email: esbinnlaw@sbcglobal.net**
3
   **Michael S. Riley (Fla. Bar #265918 Pro Hac Vice)**
4  **The Law Offices of Michael S. Riley**
   **242 Algiers Ave., Fort Lauderdale, FL 33308**
5  **Tel: (954) 401-3757 | Facsimile: (661) 254-5252 | Tel: (818) 877-6423 | Email: mriley8@aol.com**

6  Attorneys for Plaintiff and Reorganized Debtor

7

8              **UNITED STATES BANKRUPTCY COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| 10  In re | ) Chapter 11 Case |
| | ) |
| 11  Allana A. Baroni, | ) Bank. Case No. 1:12-bk-10986-AA |
| | ) |
| 12          Reorganized Debtor. | ) Adv. Proc. No. 1:13-ap-_____-AA |
| | ) |
| 13 ———————————————— | ) (OBJECTION TO CLAIM NO. 3-1) |
| | ) |
| 14  ALLANA BARONI, | ) ADVERSARY COMPLAINT TO: |
| | ) |
| 15          Plaintiff, | ) 1. DETERMINE THE NATURE, EXTENT |
| | ) AND VALIDITY OF LIEN / DECLARATORY |
| 16  v. | ) RELIEF [Fed.R.Bank.P. 7001, 28 U.S.C. §2201; |
| | ) 2. QUASI CONTRACT / UNJUST |
| 17  ONE WEST BANK, FSB | ) ENRICHMENT; |
| | ) 3. VIOLATION OF 15 U.S.C. §1692, ET SEQ.; |
| 18          Defendant. | ) 4. VIOLATION OF 12 U.S.C. § 2605; |
| | ) 5. VIOLATION OF CALIFORNIA BUSINESS |
| 19 | ) AND PROFESSIONS CODE SECTION §17200, |
| | ) ET SEQ.; |
| 20 | ) 6. ACCOUNTING |
| | ) |
| 21 | )          DEMAND FOR JURY TRIAL |
| | ) |
| 22 | ) Date:    (none set) |
| | ) Time: |
| 23 | ) Place:   Courtroom 303 |
| 24 ———————————————— | ) 21041 Burbank Blvd., Woodland Hills, CA |

25       TO THE HONORABLE ALAN M. AHART, UNITED STATES BANKRUPTCY JUDGE,

26  UNITED STATES TRUSTEE, PARTIES IN INTEREST AND COUNSEL OF RECORD:

27       COMES NOW Plaintiff, Allana Baroni ("Plaintiff " or "Baroni"), by and through counsel, Louis J.

28  Esbin, Esq., of the Law Offices of Louis J. Esbin, and Michael S. Riley, of the Law Offices of Michael S.

Riley (*admitted pro hac vice*), pursuant to this ADVERSARY COMPLAINT TO: 1. DETERMINE THE NATURE, EXTENT AND VALIDITY OF LIEN / DECLARATORY RELIEF [Fed.R.Bank.P. 7001, 28 U.S.C. §2201; 2. QUASI CONTRACT / UNJUST ENRICHMENT; 3. VIOLATION OF 15 U.S.C. §1692, ET SEQ.; 4. VIOLATION OF 12 U.S.C. § 2605; 5. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION §17200, ET SEQ.; 6. ACCOUNTING ("Complaint" or "Adversary") to allege, state, plead, and contend against Defendant One West Bank, FSB ("OWB" or "Defendant") the following and in Objection to Claim No. 3-1, as filed by OWB, reserving and not waiving any right to amend this Complaint as appropriate and allowed, as the need may require or be presented:


I.

GENERAL ALLEGATIONS

A.

THE PARTIES AND PARTIES IN INTEREST

1.      Allana Baroni ("Baroni or Plaintiff") is an individual residing in the County of Los Angeles, State of California, who on February 1, 2012, filed a petition under Chapter 13, Title 11 United States Code, commencing case number 1:12-bk-10986-AA ("Case"), that was converted to a case under Chapter 11 in which she had been operating as a debtor and debtor in possession until confirmation of her Chapter 11 Plan, and in which Case Debtor's First Amended Disclosure Statement was approved by order entered on February 14, 2013 (Case Doc. No. 316) and her Second Amended Chapter 11 Plan was confirmed by order entered on April 15, 2013 (Case Doc. No. 423).

2.      Plaintiff is informed and believes, and based thereon alleges, that OneWest Bank, FSB ("OWB" or "Defendant") is an entity doing business in the state of California, has its principal place of business in Pasadena, California, is regulated by the Office of the Comptroller of the Currency, and may be owned by OneWest Bank Group LLC ("OWBG"), which is owned by IMB HoldCo LLC ("IMB"), also having their principal place of business in Pasadena, California.

///

///

///

**B.**

**JURISDICTION AND VENUE**

3.     This Court has jurisdiction over this Adversary, pursuant to 28 U.S.C. §§ 157 and 1334, in that it arises in or is related to the Case and to Claim No. 3-1 filed by Defendant in the Case.

4.     This action is a "core proceeding" under 28 U.S.C. § 157(b)(2).

5.     Venue of this action is proper, under 28 U.S.C. § 1408 and 1409, in that it arises in or relates to the Case, which is presently pending in the United States Bankruptcy Court for the Central District of California.

**C.**

**PROCEDURAL AND FACTUAL BACKGROUND**

6.     On August 26, 2004, a Deed of Trust ("DOT") and Promissory Note ("Note") were made, executed and delivered by Plaintiff (together the "Loan") to refinance the real property located at 3339 Via Verde Court, Calabasas, CA 91302 ("Property"). First Federal Bank of California is identified on the Note as the "Lender." First Federal Bank of California of California ("First Federal") is identified as the "Beneficiary" on the Deed of Trust.

7.     On February 1, 2012, Plaintiff filed a petition under Chapter 13, Title 11 United States Code, commencing case number 1:12-bk-10986-AA ("Case"), that was converted to a case under Chapter 11 in which she had been operating as a Debtor and Debtor in possession ("Debtor") until confirmation of her Chapter 11 Plan. Plaintiff's Second Amended Plan was confirmed by order entered on April 15, 2013.

8.     On March 27, 2012, Defendant filed Proof of Claim No. 3-1 in Debtor's Case, in which it asserts a secured claim in the amount of $1,860,964.23 ("Claim"), which is purportedly secured by the Property. A true and correct copy of the Claim is attached and incorporated by reference as "Exhibit 1."

9.     The Claim filed by Defendant does not attach documents or documentation sufficient to establish that Defendant is the holder of the Note owing by Plaintiff or the Security Interest recorded against the Property. The DOT and Note attached to the Claim each identify First Federal Bank of California as the beneficiary. Defendant is not identified on either the DOT or the Note as the beneficiary.

10.     Prior to commencing the Adversary, on February 14, 2011, a Qualified Written Request ("QWR") under the Real Estate Settlement Procures Act 12 U.S.C. § 2605(e) ("RESPA") was sent by Plaintiff to Defendant requesting true, correct, and authenticated copies of the Note and DOT.

11.     On September 29, 2011, in response to the QWR, Defendant provided a copy of a Note and DOT in favor of First Federal Bank of California. An allonge containing a purported endorsement of the Note to OWB was included in Defendant's response. The endorsement was undated, unauthenticated, unattached to the Note and executed by "Crystal Moore - 3rd Party Authorized Signatory, Nationwide Title Clearing" ("Allonge 1").

**D.**

**THE PURPORTED ALLONGE(S) FAIL TO ENDORSE THE NOTE TO OWB**

12.     A true and correct copy of Allonge 1 is attached and incorporated by reference to this Complaint as "Exhibit 2," purportedly with an endorsement of the Note to OWB from a third party, Nationwide Title Clearing; however there is no endorsement on the Note from First Federal to Nationwide Title Clearing.

13.     Plaintiff is informed and believes, and based thereon alleges, that Allonge 1 was not  affixed to the Note in any manner and, based thereon, Allonge 1, as a matter of law, does not serve as an endorsement under California Commercial Code Section 3-202(2),  Defendant is not the holder of the Note, the Note had not been properly negotiated, ownership of the Note never transferred to Defendant, Allonge 1 is not valid and, accordingly, Defendant is not entitled to holder in due course status, lacking standing to file the Claim.

14.     Plaintiff is informed and believes, and based thereon alleges that Crystal Moore[1] had no authority to execute the documents or personal knowledge of the facts for which she attests, nor did Ms. Moore have the Note in her possession when she purportedly endorsed it.

15.     On April 2, 2013, Plaintiff and Defendant appeared at the 11 U.S.C. §341 (a) Meeting of Creditors. During this meeting Defendant produced what was purported to be the original Note and a new allonge ("Allonge 2"), true and correct copy of which is attached and incorporated by reference as "Exhibit 3," twenty-eight (28) months after the QWR. The Allonge 2 is also undated, unauthenticated and once again executed by Crystal Moore, this time, however, as attorney-in-fact for the FDIC as Receiver for First Federal.

///

16.    Plaintiff is informed and believes, and based thereon alleges, that Crystal Moore[1] had no authority to execute Allonge 2, nor did she have personal knowledge of the facts for which she attests, nor did she have the Note in her possession when she purportedly endorsed it for the second time.

17.    Plaintiff is informed and believes, and based thereon alleges, that Allonge 2 was not affixed to the Note in any manner and, based thereon, Allonge 2, as a matter of law, does not serve as an endorsement, Defendant is not the holder of the Note, the Note had not been properly negotiated, ownership of the Note never transferred to Defendant, Allonge 2 is not valid and, accordingly, Defendant is not entitled to holder in due course status and lacked standing to file the Claim.[2]

## E.

## DEFENDANT'S DOCUMENT DO NOT ESTABLISH OWB IS THE TRUE CREDITOR

18.    On October 23, 2012, Plaintiff filed a Notice of Motion and Motion Pursuant to Fed. R. Bankr. P. 2004 for the Production of Documents and the Oral Examination of the Person Designated by OWB to be Most Knowledgeable of the Topics Identified in the Motion ("2004 Exam") [Doc. No 172]. An Order granting the 2004 Exam was entered on October 29, 2012 [Doc. No. 173]. In response to the 2004 Exam Plaintiff received a partial copy of a Purchase and Assumption Agreement dated December 18, 2009, between the FDIC, as Receiver for First Federal, on the one hand, and OWB, on the other hand ("PAA"), a true and correct copy of which pertinent parts are attached and incorporated by reference as "Exhibit 4." Pursuant to Article VI, Section 6.1.a (b), of the PAA, all loan and collateral records would be delivered by

---

[1]    On November 4, 2010 Crystal Moore, an employee of Nationwide Title Clearing, was deposed in the case of *Deutsche Bank National Trust vs. Peter Y. Morlon* (Circuit Court, Twelfth Judicial District, Sarasota, Florida, Case No. 2009-CA-007211). Ms. Moore testified that she executes over 3,0000 documents per day in a variety of capacities from Vice President of many Lenders, to Witness, to Notary. Ms. Moore also testified that she does not read the documents nor understand the meaning of the documents she signs. Ms. Moore further testified that she does not know the meaning of "attorney-in-fact" and clarified that on many occasions she never sees the documents, rather her "e-signature" is attached to the documents without her knowledge.

[2]    In the AZ BK case of *In re Barry Weisband*, US Bk Court D. AZ 3/29/2010 427 B.R. 14 case no. 4:09-bk-05175-EWH, the court found "GMAC failed to demonstrate that the Note is properly payable to GMAC. For the Endorsement to constitute part of the Note, it must be on "a paper affixed to the instrument." A.R.S. § 47-3204; see also *In re Nash*, 4,9 B. R. 254 (Bankr. D. Ariz. 1985), where the court held that: "Here, the evidence did not demonstrate that the Endorsement was affixed to the Note. The Endorsement is on a separate sheet of paper, there was no evidence that it was stapled or otherwise attached to the rest of the Note. Furthermore, when GMAC filed its proof of claim, the Endorsement was not included, which is a further indication that the allonge containing the Endorsement was not affixed to the Note."

Complaint - Baroni v. OneWest Bank            5

the FDIC to OWB.  To date, even after repeated requests, no records or schedule of assets that includes Plaintiff's Loan were produced by OWB and OWB is forcing Plaintiff to compel the production of documents through a duly noticed motion.

19.    Plaintiff is informed and believes, and based thereon alleges that OWB did not acquire Plaintiff's Loan under the PAA and, therefore, OWB did not acquire Plaintiff's Loan from the FDIC, is not holder of the Note and DOT, and cannot establish it has standing in this Case to have filed, enforce or collect on the Claim.[3]

**F.**

**THE LOAN WAS PLEDGED TO A SECURITIZED LOAN TRUST**

20.    Plaintiff is informed and believes, and based thereon alleges, that the Loan was pledged to a securitized Loan Trust.

21.    On June 19, 2012, Plaintiff was provided the opportunity to review the loan file in the office of Defendant's counsel. A document titled Trust and Security Services Transmittal on Deutsche Bank letterhead, dated September 27, 2011 ("Loan Trust") was located and reproduced, a true and correct copy of which is attached and incorporated by reference as "Exhibit 5."  Based on the coding on the document, Plaintiff contacted Deutsche Bank ("Deutsche Bank") on July 2, 2012, and spoke with their representative Mark Kelly, a Deutsche Vice President. Mr. Kelly reviewed the file with Plaintiff, from which meeting the following are further alleged to be true and correct:

       a.    Deutsche Bank, as of September 27, 2011, was in possession of Plaintiff's original Note and DOT.

       b.    There are multiple Notes in the file attributed to Plaintiff' Property, dated (i) May 7, 2010, (ii) September 1, 2004 and (iii) August 26, 2004, with Mr. Kelly referring to the September 1, 2004 and

---

[3]    The instant case is analogous to *OneWest Bank, FSB vs. Cullen* (Supreme Court of NY RJI:55-09-02155 Index No. 09-5421 March 3, 2010), where the court found, "One West did submit a copy of the FDIC Bill of Sale, without the schedule or list which identified the IndyMac assets transferred to it. Id at footnote 1. Therefore, "OneWest's unsubstantiated claim that it acquired the Cullen Note and mortgage as part of its March 19, 2009 purchase of IndyMac assets from the FDIC is insufficient to establish that OneWest became the holder of the subject note and mortgage prior to the commencement of the foreclosure action. For the foregoing reasons the court finds that OneWest has failed to establish it has standing in this proceeding (CPLR 3211), and dismisses the complaint in this proceeding."

August 26, 2004, Notes as "Conflict Notes."

      c.      According to the file, the May 7, 2010, Note is associated with the code OW09BC which is the OWB deal sheet, and specified that the Note was securitized and sold into the Loan Trust.

22.      On March 6, 2013, Plaintiff filed a Notice of Motion and Motion Pursuant to Fed. R. Bankr. P. 2004 for the Production of Documents and the Oral Examination of the Person Designated by Deutsche Bank to be Most Knowledgeable of the Topics Identified in the Motion ("Deutsche Bank 2004 Exam") [Doc. No 348], with an Order entered on March 7, 2013, granting the Deutsche Bank 2004 Exam [Doc. No. 354], that included a request for copies of the three Notes identified by Mr. Kelly, and including documentation regarding the chain of custody of the Notes and documentation of the deal sheet "OW09BC" between OWB and Deutsche Bank.

23.      Notwithstanding the Order granting the Deutsche Bank 2004 Exam and repeated requests for cooperation, Deutsche Bank has ignored the Deutsche Bank 2004 Exam and has not provided documents, produced Mr. Kelly, or produced the person most knowledgeable for sworn testimony, necessitating Plaintiff to prepare for filing a motion to compel Deutsche Bank to comply with the court order for Production of Documents and Oral Examination of their Person Most Knowledgeable.

24.      On September 10, 2013, OWB as servicing agent, for IndyMac Loan Trust 2006-AR13, on the one hand, and Debtor, on the other hand, entered into the Stipulation and Order found as Case Doc. No. 505 ("Stipulation"), which Stipulation was executed by Alexandra Rhim, as the attorney for:

> "OneWest Bank, FSB, a federal savings bank, as Servicing Agent for Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2006-AR13, Mortgage Pass Through Certificates, Series 2006-AR13 under the Pooling ad Servicing Agreement dated May 1, 2006."

25.      Plaintiff is informed and believes, and based thereon alleges, that OWB is not the creditor of the Claim and did not have standing to file the Claim and does not have standing to enforce or collect the Claim, and based upon the Stipulation and the PAA, a real controversy has arisen as to who exactly is owed the money due under the Loan and the exact amount due and owing under the Loan, and until such time as there is a finding, Plaintiff should not be obligated or compelled to pay any amount due under the Note and no actions should be permitted or remedy sought under the DOT.

26.    The DOT and Note provided to Plaintiff and attached to Defendant's Claim, do not identify the Defendant in any capacity. Plaintiff, therefore, disputes Defendant is the holder in due course of the Note or the beneficiary under the DOT and is, therefore, with without standing to file a proof of claim.[4]

27.    Plaintiff is informed and believes, and based thereon alleges, that from the documents and documents attached to the Claim, or produced at either the 2004 Exam or the Deutsche Bank 2004 Exam, Defendant has not proved it is the "Holder" of the Note with standing to bring file, prosecute or defend the Claim; a requirement that is not merely technical, but critical for Debtor who could be exposed to "the danger that multiple holders would seek foreclosure [and money judgment] based upon the same note and mortgage."[5]

28.    Plaintiff is informed and believes, and based thereon alleges, that where Defendant filed the Claim without attaching true and correct copies of writings upon which the Claims is based, Defendant did not meet its burden of establishing a prima facie case against Debtor and, further, the Claim should not be allowed where it is unenforceable against Debtor, property of Debtor or the Estate, under any agreement or applicable law.[6]

///

///

///

///

///

---

[4] In *In re Hayes*, 393 B.R. (Bankr. D. Mass., 2008), the court noted that both it and the debtor are entitled to insist that the moving party establish its standing in a motion from relief from stay through the submission of an accurate history of the claim of the mortgage. Absent such proof, relief from the stay is unwarranted and a proof of claim filed by the moving party, to which an objection is filed, must be disallowed, *Id* at 269.

[5] *Washington Mut. Bank. F.A. v. Green*, 156 Ohio App. 3d 461 (2004).

[6] 11 U.S.C. § 502 (b)(1). In addition, Bankruptcy Rule 3001(c) provides that "[w]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim." If the writing has been lost or destroyed, "a statement of the circumstances of the loss or destruction shall be filed with the claim." *Id*. Bankruptcy Rule 3001(d) further provides, "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Official Form 10, as prescribed by the Judicial Conference of the United States, also requires a creditor to attach supporting documentation to the proof of claim. "[T]he documentation required by Bankruptcy Rule 3001 and Official Form 10 allows the debtor . . . to have enough information to fully determine whether or not a valid claim in the proper amount has been filed." *In re Armstrong*, 320 B.R. 97, 104 (N.D. Tex. 2005).

Complaint - Baroni v. OneWest Bank                8

## II.

## CLAIMS FOR RELIEF

## A.

## FIRST CLAIM FOR RELIEF

## DECLARATORY RELIEF / INVALIDATE LIEN [FED. R. BANK. 7001]

29.     Plaintiff hereby refer to and incorporate by this reference Paragraphs 1 through 28, as though fully set forth herein.

30.     Plaintiff hereby alleges that Defendant does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the DOT and the Note and that the purported, belated, and fabricated endorsements to the Note have no value or impact.

31.     On March 27, 2012, Defendant claimed they were assigned and transferred a secured enforceable interest in, and a perfected lien against the Plaintiff's Note, DOT and Property.

32.     Plaintiff is informed and believes, and based thereon alleges, that a real and actual controversy exists as to the respective rights of Plaintiff and Defendant, including title in and to the Property subject to the DOT evidencing security for the Note.

33.     Defendant provided no documents establishing it owns the Note and DOT, and has denied Plaintiff the opportunity to identify and verify Defendant's Claim by a custodian of records who has personal knowledge of the Loan allegedly purchased by OWB and all transactions relating to or arising from the OWB's alleged ownership of the Loan.

34.     Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify her true and correct creditor; (2) she will be denied the right to conduct discovery and have OWB's Claim verified by a custodian of records and the person most knowledgeable of the Loan and all transactions related to and arising therefrom; and (3) she will be denied the opportunity to discover the true amount actually owed.

35.     It is necessary that the Court declare the actual rights and obligations of the parties and make a determination whether OWB's Claim is enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiff's Property, as allowed under 28 U.S.C. §2201.

///

**B.**

**SECOND CLAIM FOR RELIEF**

**QUASI CONTRACT / UNJUST ENRICHMENT**

36.     Plaintiff hereby refer to and incorporate by this reference Paragraphs 1 through 28, and Paragraphs 30 through 35, as though fully set forth herein.

37.     Plaintiff is informed and believes, and based thereon alleges, that Defendant has not provided any documents or documentation to verify that Plaintiff's Note and the DOT were ever validly transferred to Defendant and, therefore, Plaintiff is informed and believes, and based thereon alleges, that Defendant, who purports to be Plaintiff's creditor by having filed the Claim, actually has no right, title, or interest in Plaintiff's Note or DOT, but nevertheless is attempting to be unjustly enriched by collecting payments they are not otherwise entitled to enforce or collect.

**C.**

**THIRD CLAIM FOR RELEIF**

**VIOLATION OF 15 U.S.C. §1692, ET SEQ.**

38.     Plaintiff hereby refer to and incorporate by this reference Paragraphs 1 through 28, Paragraphs 30 through 35, and Paragraph 37, as though fully set forth herein.

39.     Defendant has attempted to collect Plaintiff's debt obligation and thus is a debt collector, pursuant to the Federal Debt Collection Practices Act ("FDCPA"). "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6).

40.     Federal law prohibits the use of  "any false, deceptive, or misleading representation or means in connection with the collection of any debt…. [including] the false representation of …the character, amount, or legal status of any debt…or the threat to take action that cannot be legally taken…." 15 U.S.C. §1692e(2)(A), (5).

41.     Defendant attempted to collect on the Plaintiff's Note under false pretenses, namely that OWB was assigned Plaintiff's debt when in fact they were not.

///

42.    As alleged herein, Plaintiff's Note was not properly transferred to OWB, who seeks to collect and enforce the collection of mortgage payments and engage in other unlawful collection practices.

43.    Plaintiff is informed and believes, and based thereon alleges, that OWB does not have a perfected security interest in Plaintiff's Note such that they cannot enforce Plaintiff's obligation or collect mortgage payments under either the Note or DOT.

44.    Plaintiff is informed and believes, and based thereon alleges, that OWB falsely represented the status of Plaintiff's debt and Defendant's ability to enforce Plaintiff's debt obligation, in which they have no pecuniary, equitable, or legal interest.

45.    The conduct of OWB described above is malicious, because Defendant knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and DOT, however, despite such knowledge, Defendant continues to demand and collect on Plaintiff's Loan payments.

46.    Plaintiff is informed and believes, and based thereon alleges, that OWB engaged and is engaging in a pattern and practice of defrauding Plaintiff, in that during the entire life of the Loan, Defendant failed to properly credit payments made, incorrectly calculated interest on the account, and failed to accurately debt fees.

47.    Plaintiff is informed and believes, and based thereon alleges, that at all times material, OWB had, and has, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would continue to make further payments based on Defendant's inaccurate account, and that Plaintiff did make payments based on these improper, inaccurate and fraudulent representations.

48.    Plaintiff is informed and believes, and based thereon alleges, that the with respect to Plaintiff, the foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §1692 et seq.

49.    Plaintiff could not have reasonably known of the existence of a claim for violation of 15 U.S.C. § 1692(e), because Defendant fraudulently concealed the fact that they were not entitled to enforce Plaintiff's debt obligation and that they were falsely representing to Plaintiff that that character and amount of money Plaintiff owed on her debt.

*///*

50.    As a result of each and every one of Defendant's violations of the FDCPA, Plaintiff is entitled to be compensated from Debtor for the: actual damages pursuant to 15 U.S.C. §1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A); reasonable attorneys' fees and costs pursuant to 15 U.S.C. §1692k(a)(3); and declaratory relief.

51.    Plaintiff relied on Defendant's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce the debt obligation against her, (2) the title to her property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's property will find themselves in legal limbo, unable to know whether they can safely purchase Plaintiff's property or get title insurance; (3) Plaintiff has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) Plaintiff is unable to determine whether her Chapter 11 Plan Payments will be sent to the proper party; (5) Plaintiff's credit score has been damaged; and (6) Plaintiff has expended significant funds to cover the costs of attorneys' fees and related costs.

### D.

### FOURTH CLAIM FOR RELEIF

### VIOLATION OF 12 U.S.C. §2605 (RESPA)

52.    Plaintiff hereby refer to and incorporate by this reference Paragraphs 1 through 28, Paragraphs 30 through 35, Paragraph 37, and Paragraphs 39 through 51, as though fully set forth herein.

53.    The Loan is a federally regulated mortgage loan and is subject to the Federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

54.    From February 14, 2011 through and including January 13, 2012, Plaintiff forwarded Defendant Qualified Written Requests (each a "QWR") via email and US Postal Service.  Plaintiff is informed and believes, and based thereon alleges, that Defendant received each of QWR, including that received on or about December 30, 2011, via email and on or about January 5, 2012, via US Postal Service.

55.    The QWR contained information to enable OWB to identify Plaintiff's Loan and also contained requests for information about the Loan, specifically about the identity of the holder of the Loan, requests about Allonge 1, which Defendant provided to Plaintiff in September 2011, and requested information to verify the validity of the purported debt allegedly owed to OWB; however, OWB did not provide the contact information for the holder of Plaintiff's Note, as required by 12 U.S.C. §2605, et seq, and did not comply

1  with the requirements of  12 U.S.C. §2605, et seq.

2  56.    Defendant was required to comply with Section 6 of RESPA appearing at 12 U.S.C. §2605.

3  Defendant violated Section 6 of Regulation X upon receipt of Plaintiff's QWR by their actions including,

4  but not limited to: (a) failure to make appropriate corrections to Plaintiff's account including crediting of late

5  charges and penalties, (b) failure to protect Plaintiff's credit rating upon receipt of Plaintiff's QWR by

6  furnishing adverse information regarding payment to credit reporting agencies and defined in § 603 of the

7  Fair Credit Reporting Act, 15. U.S.C. § 1681(a).

8  57.    As detailed above, OWB violated 12 U.S.C. §2605 and is subject to statutory damages, civil liability,

9  penalties, attorneys' fees and actual damages. The actual pecuniary damages include, but are not limited to,

10  the costs associated with removing the cloud on title to Plaintiff's Property, the over calculation and

11  overpayment of interest on Plaintiff's Loan, the costs of repairing Plaintiff's credit, the reduction and

12  elimination of Plaintiff's credit limits, and attorneys fees and costs, in an amount to be proven at trail.

13  58.    As a direct and proximate result of the violations of RESPA and Regulation X by OWB, Plaintiff

14  has suffered actual pecuniary damages, including but not limited to statutory damages, civil liability and

15  attorney fees in an amount to be proven at trail.

16  **E.**

17  **FIFTH CLAIM FOR RELIEF**

18  **CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 ET.SEQ.**

19  59.    Plaintiff hereby refer to and incorporate by this reference Paragraphs 1 through 28, Paragraphs 30

20  through 35, Paragraph 37, Paragraphs 39 through 51, and Paragraphs 52 and 58, as though fully set forth

21  herein.

22  60.    The Defendant has engaged in unfair, unlawful, and fraudulent business practices in the State of

23  California, as set forth herein.

24  61.    By engaging in the above-described acts and practices, Defendant has committed one or more acts

25  of unfair competition within the meaning of Bus. And Prof. Code Section 17200, et. seq.

26  62.    California Business and Professions Code Section 17200, et seq., prohibits acts of unfair

27  competition, which means and includes any unlawful, unfair or fraudulent business act and conduct that is

28  likely to deceive and is fraudulent in nature.

63.     Plaintiff is informed and believes, and based thereon alleges, that Defendant's conduct, for the reasons stated herein, is in direct violation of 15 U.S.C. §1692.

64.     Plaintiff is informed and believes, and based thereon alleges, that Defendant acted as a beneficiary without the legal authority to do so.

65.     Plaintiff is informed and believes, and based thereon alleges, that Defendant facilitated, aided, and abetted the illegal, deceptive and unlawful enforcement of Plaintiff's Note and DOT and engaged in other illegal debt collection activities.

66.     Plaintiff is informed and believes, and based thereon alleges, that OWB does not have a perfected security interest in Plaintiff's Note such that they can enforce Plaintiff's obligation or collect mortgage payments.

67.     Plaintiff is informed and believes, and based thereon alleges, that OWB fraudulently enforced a debt obligation in which they had no pecuniary, equitable, or legal interest.

68.     Plaintiff is informed and believes, and based thereon alleges, that the conduct described above is malicious, because Defendant knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and DOT. However, despite such knowledge, Defendant continues to demand and collect on Plaintiff's mortgage payments.

69.     Plaintiff is informed and believes, and based thereon alleges, that at all times material, OWB had, and has, actual knowledge that Plaintiff's account was not accurate, but that Plaintiff would continue to make further payments based on Defendant's inaccurate account, and that Plaintiff made payments based on these improper, inaccurate and fraudulent representations.

70.     Plaintiff is informed and believes, and based thereon alleges, that as more fully described above, Defendant's acts and practices are unlawful and that this conduct is ongoing and continues to this date.

71.     Plaintiff is informed and believes, and based thereon alleges, that as more fully described above, Defendant's acts and practices are likely to deceive members of the public and that this conduct is ongoing and continues to this date.

72.     Plaintiff is informed and believes, and based thereon alleges, that as more fully described above, Defendant's acts and practices are unfair and the harm caused by their conduct outweighs any benefit that their conduct may have and that this conduct is ongoing and continues to this date.

73.     Plaintiff is informed and believes, and based thereon alleges, that by engaging in the above-described acts or practices as alleged herein Defendant violated several laws including California Business and Professions Code Section 17200, et seq., and must be required to disgorge all profits related to their unfair, unlawful and deceptive business practices.

74.     Plaintiff is informed and believes, and based thereon alleges, that the foregoing acts have caused substantial harm to California consumers, including Plaintiff.

75.     Plaintiff is informed and believes, and based thereon alleges, that by reason of the foregoing, Defendant has been unjustly enriched, by collecting payments that they are not entitled to, and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing such practices pursuant to California Business and Professions Code Sections 17203 and 17204.

76.     Plaintiff is informed and believes, and based thereon alleges, that as a direct and proximate result of the actions of Defendant, Plaintiff has been injured in that a cloud has been placed upon the title to Plaintiff's Property and Defendant has failed, refused or neglected to remove this cloud.

77.     Plaintiff requests the Court to issue an order compelling OWB to take any and all actions necessary to remove the cloud upon Plaintiff's title to her Property and an order enjoining Defendant from taking actions again in the future to enforce or collect on the Loan.

78.     Plaintiff is informed and believes, and based thereon alleges, that as a direct and proximate result of the violations of California Business and Professions Code Section 17200, et.seq., by Defendant, Plaintiff has suffered actual pecuniary damages, including but not limited to, civil liability, restitution, injunctive relief preventing Defendant from continuing to collect mortgage payments and attorney fees in an amount this Court deems just and proper.

79.     Plaintiff is informed and believes, and based thereon alleges, that as a result of Defendant's violations of California Business and Professions Code Section 17200, et.seq., Plaintiff has been damaged in the following ways: (1) multiple parties may seek to enforce a debt obligation against her; (2) the title to the Property has been clouded and its salability has been rendered unmarketable, as any buyer of Plaintiff's property will find themselves in legal limbo, unable to know whether they can safely purchase Plaintiff's Property or secure title insurance; (3) Plaintiff has been paying the wrong party for an undetermined amount

of time; (4) Plaintiff's credit score has been damaged; and (6) Plaintiff has expended significant funds to cover the cost of attorney fees and costs.

## F.

## SIXTH CLAIM FOR RELIEF – ACCOUNTING

80.    Plaintiff hereby refer to and incorporate by this reference Paragraphs 1 through 28, Paragraphs 30 through 35, Paragraph 37, Paragraphs 39 through 51, Paragraphs 52 and 58, and Paragraphs 60 through 79, as though fully set forth herein.

81.    Plaintiff is informed and believes, and based thereon alleges, that OWB has held themselves out as Plaintiff's creditor and mortgage servicer. As a result of this purported relationship, Defendant has a fiduciary duty to Plaintiff to properly account for all payments made as a result of Plaintiff's Loan. Under Pursuant to the 2004 Exam and Deutsche Bank 2004 Exam, Plaintiff requested a complete loan transaction history, however, Defendant has failed, refused or neglected to provide such documentation, and yet through Defendant's counsel, the representation was made to Plaintiff in an email dated January 11, 2013: "those items not produced, do not exist."

82.    As a result of the conduct, Plaintiff paid OWB her Loan payments for a period of approximately 12 months, however, for reasons stated herein, those payments were not actually owed to OWB, and for among other reasons, such monies should be returned to Plaintiff.


**WHEREFORE**, Plaintiff prays as follows:

a.    For general and special damages according to proof;

b.    For actual monetary damages and/or for compensatory statutory damages, attorneys' fees and costs according to proof at trail; and for exemplary and punitive damages.

c.    For an order compelling Defendants to remove any instrument, which does or could be construed as constituting a cloud upon Plaintiff's title to the Property;

d.    For a declaratory judgment finding that the Defendant does not have legally cognizable rights as to Plaintiff, the Property, Plaintiff's Note, Plaintiff's DOT, or any other matter based on contract or any of the documents prepared by Defendant, tendered to an executed by Plaintiff;

///

e.    For an order compelling Defendant to disgorge all amounts wrongfully taken from Plaintiff and returning the same the Plaintiff's interest thereon at statutory rate from the date the funds were first received by Plaintiff;

f.    For costs of suit incurred herein;

g.    For reasonable attorneys' fees incurred and costs advanced; and

h.    For such other and further relief as this Court may deem just and proper.

Dated: November 15, 2013                    LAW OFFICES OF LOUIS J. ESBIN

                                            /s/ Louis J. Esbin

                                            BY_____
                                            LOUIS J. ESBIN
                                            Attorneys for Reorganized Debtor

**EXHIBIT "1"**

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>SAN FERNANDO VALLEY DIVISION | PROOF OF CLAIM |
|---|---|

| Name of Debtor:   Allana Baroni | Case Number:<br><br>SV12-10986-AA |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.*
*You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>OneWest Bank, FSB | **COURT USE ONLY** |
| Name and address where notices should be sent:<br><br>   OneWest Bank, FSB<br>   P.O. Box 829009<br>   Dallas, Texas 75382-9009<br><br>   Telephone Number:  (800) 781-7399     email: | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number: _____<br><br>*(If Known)*<br><br>*Filed on* _____ |
| Name and address where payment should be sent: (if different from above):<br>   OneWest Bank, FSB<br>   Bankruptcy Department<br>   6900 Beatrice Drive Attn: Cashiering Department<br>   Kalamazoo, Michigan 49009<br><br>   Telephone Number: (800) 781-7399     email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim.  Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

**1. Amount of Claim as of Date Case Filed:** _____ $1,860,964.23

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

| **2. Basis for Claim:** _____ Money Loaned<br>(See instruction #2) |
|---|

| **3. Last four digits of any number by which the creditor identifies debtor:**<br>    xxxxxx0262 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

| **4. Secured Claim** (See instruction #4)<br>Check the appropriate box if the claim is secured by a lien or property or a right of setoff, attach required redacted documents, and provide the requested information.<br><br>**Nature of Property or right of setoff:** ☒ Real Estate  ☐ Motor Vehicle  ☐ Other<br>**Describe:**    3339 Via Verde Court, Calabasas, California  91302<br><br>**Value of Property:** _____<br><br>**Annual Interest Rate:** _____3.5750%___  ☐ Fixed  or  ☒ Variable<br>(when case was filed) | **Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**<br><br>_____ $110,065.31<br><br>**Basis for perfection:** _____ Recordation of Lien<br><br>**Amount of Secured Claim:** _____ $1,860,964.23<br><br>**Amount of Unsecured:** _____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check box specifying the priority and state the amount.**

| | |
|---|---|
| ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a) (1)(B). | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4). |
| ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5). | **Amount entitled to priority:** |
| ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U.S.C. §507(a)(7). | ☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8). |
| ☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a) (__). | _____ |

*Amounts are subject to adjustment on 04/01/2013 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11)

---

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements.  If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached.  *(See instruction #7, and the definition of "**redacted**.")*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature**: (See instruction #8)

Check the appropriate box.

☐  I am the creditor.     ☒   I am the creditor's authorized agent.          ☐   I am the trustee, or the debtor.          ☐   I am a guarantor, surety, indorser, or other
                          (Attach copy of power of attorney, if any.)   (See Bankruptcy Rule 3004.)                      codebtor.  (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   **Craig A. Edelman**
Title:        Authorized Agent for OneWest Bank, FSB
Company:      Brice, Vander Linden & Wernick, PC                    /s/ **Craig A. Edelman**
                                                                   Signature

Address and telephone number (if different from notice address above):   03/08/2012
        P. O. Box 829009                                          Date
        Dallas, TX 75382-9909

Telephone:      (972) 643-6600          Email:        pocinquiries@bkcylaw.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

B10Form_Ver001 : 6507-N-1978

B 10 (Attachment A) (12/11)

Chapter: 11

## Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | Allana Baroni | **Case Number:** | SV12-10986-AA |
| **Name of creditor:** | OneWest Bank, FSB | **Last four digits** of any number you identify the debtor's account: | xxxxxx0262 |

## Part 1: Statement of Principal and Interest Due as of the Conversion Date (02/29/2012)

**Itemize the principal and interest due on the claim as of the conversion date** (include in the Amount of Claim listed in item 1 of your Proof of Claim form).

1.  **Principal due**                                         (1)   **$1,775,166.81**

2.  **Interest due**

| | Interest Rate | From | To | Amount |
|---|---|---|---|---|
| | 3.575% | 01/01/2011 | 02/29/2012 | $74,039.28 |

        **Total interest due as of the Conversion date** $74,039.28     Copy total here **>** (2) **+ $74,039.28**

3.  **Total principal and interest due**                                 (3)   **$1,849,206.09**

## Part 2: Statement of Pre-Conversion Fees, Expenses, and Charges

**Itemize the fees, expenses, and charges due on the claim as of the conversion date** (include in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | | Dates incurred | Amount | |
|---|---|---|---|---|
| 1. Late Charges | | 1 @ $453.73 incurred on 08/16/11<br>1 @ $453.73 incurred on 09/16/11<br>1 @ $453.73 incurred on 10/17/11<br>1 @ $453.73 incurred on 11/16/11<br>1 @ $453.73 incurred on 12/16/11<br>1 @ $453.73 incurred on 01/17/12 | (1) | $2,722.38 |
| 2. Non-sufficient funds (NSF) fees | | | (2) | |
| 3. Attorney fees | | 1 @ $710.00 incurred on 06/30/11 | (3) | $710.00 |
| 4. Filing fees and court costs | | | (4) | |
| 5. Advertisement costs | | 1 @ $676.88 incurred on 06/30/11 | (5) | $676.88 |
| 6. Sheriff/auctioneer fees | | | (6) | |
| 7. Title costs | | 1 @ $1,727.00 incurred on 06/30/11 | (7) | $1,727.00 |
| 8. Recording fees | | 1 @ $75.00 incurred on 06/30/11 | (8) | $75.00 |
| 9. Appraisal/broker's price opinion fees | | 1 @ $145.00 incurred on 01/27/12 | (9) | $145.00 |
| 10. Property inspection fees | | 1 @ $11.00 incurred on 03/30/11<br>1 @ $11.00 incurred on 05/03/11<br>1 @ $11.00 incurred on 07/06/11<br>1 @ $11.00 incurred on 08/29/11<br>1 @ $11.00 incurred on 09/30/11<br>1 @ $11.00 incurred on 11/15/11<br>1 @ $11.00 incurred on 12/01/11<br>1 @ $11.00 incurred on 01/06/12 | (10) | $88.00 |
| 11. Tax advances (non-escrow) | 2009 Non-Escrow Delinquent Taxes | 1 advance @ $5,458.88 on 08/31/11 | (11) | $5,458.88 |

B 10 (Attachment A) (12/11)

Chapter: 11

FOR THE CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

Judge: Alan M. Ahart          Trustee: :

| 12. | Insurance advances (non-escrow) | | | (12) | |
|---|---|---|---|---|---|
| 13. | Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | | (13) | |
| 14. | Property preservation expenses. | | | (14) | |
| 15. | Other. | Specify: Payoff Statement Fee<br>Specify: Service Costs | 1 @ $30.00 incurred on 03/29/11<br>1 @ $125.00 incurred on 06/30/11 | (15) | $155.00 |
| 16. | **Total preconversion fees, expenses, and charges.** Add all of the amounts listed above. | | | (16) | $11,758.14 |

## Part 3: Statement of Amount Necessary to Cure Default as of the Conversion Date

**Does the installment payment amount include an escrow deposit?**

☒ No

☐ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the **conversion** date in a form
consistent with applicable nonbankruptcy law.

| | | | | |
|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | | 01/18/2011 |
| | | Number of installment payments due: | (1) | <u>13</u> |

2. **Amount of installment payments due**

February 2011 to February 2012          13 installments @ $7,562.09 =          $98,307.17

| | **Total installment payments due as of the preconversion date** | <u>$98,307.17</u> | Copy total here | > | (2) | <u>$98,307.17</u> |
|---|---|---|---|---|---|---|

3. **Calculation of cure amount**

| | **Add** total preconversion fees, expenses, and charges | Copy total here Part 2 | > | + <u>$11,758.14</u> |
|---|---|---|---|---|
| | **Subtract** total of unapplied funds (funds received but not credited to account) | | | <u>$0.00</u> |
| | **Subtract** amounts for which debtor is entitled to a refund | | | _____ |

| | **Total amount necessary to cure default as of the conversion date** | (3) | **$110,065.31** |
|---|---|---|---|

Copy total onto Item 4
of Proof of Claim form

Your monthly payment amount may change due to an escrow requirement and/or interest rate adjustment.
Your current payment amount and any upcoming changes are provided below:

| <u>Effective Date</u> | <u>Effective Amount</u> |
|---|---|
| 03/01/2012 | $7,562.09 |

**NOTE SECURED BY DEED OF TRUST**
**(Adjustable Interest Rate Loan - CODI Index)**



THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES, MY PRINCIPAL BALANCE INCREASES AND MY INTEREST RATE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

**U.S. $ 1,610,000.00**                                      Santa Monica, California

**Loan N**                                                  **August 26, 2004**

**3339 Via Verde Court, Calabasas, CA 91302**

(Property Address)

1. In return for a loan that I have received, I promise to pay

**ONE MILLION SIX HUNDRED TEN THOUSAND AND 00/100**

Dollars (U.S. **$ 1,610,000.00** ) (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is First Federal Bank of California, a federal savings bank, its successors and/or assignees, or anyone to whom this Note is transferred. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

   (a)   Interest Rate

        Interest will be charged on the unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of **4.737%** . This is my initial interest rate. The interest rate I will pay may change. The interest rate provided for in this Section 2 is the rate I will pay both before and after any default described in Section 8 of this Note. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

   (b)   Interest Change Dates

        The interest rate I will pay may change on the **1st** day of **October, 2004** and on that day each month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

   (c)   Interest Rate Limit

        So long as I own the property securing this Note, my interest rate will never be greater than **10.075%** , or lower than **3.575%** . If this property is sold or transferred, with the prior consent of Lender as provided in Paragraph 12, the maximum interest rate will be **5.338%** percentage points above the greater of:

        (i) my initial interest rate, or

        (ii) my interest rate at the time of sale or transfer.

   (d)   The Index

        Beginning with the first Interest Change Date, the interest rate will be based on an index (the "Index"). The Index is determined by the Lender based upon the average of the last twelve calendar months' most recently published monthly yields on dealer offering rates on nationally traded three-month certificates of deposit. The Lender will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve, rounded to the nearest one-thousandth of one percentage point (0.001%). Information on such monthly yields on three-month certificate of deposit dealer rates is published by the Federal Reserve Board. The most recent Index figure available as of the date 15 days before each Interest Change Date is the "Current Index."

        If the Index or any Index previously substituted under this Section 2(d) is no longer available, or is otherwise unpublished, or at Lender's sole discretion is determined to be substantially recalculated, the Lender may choose a new Index. The Lender will give me notice of the choice. The Lender shall next adjust the Margin set forth in Section 2(e) of this Note based upon the value of the substituted index as of the last preceding Interest Change Date on which the prior Index was available or the date of this Note, whichever occurs later, such that the sum of the substituted index and the adjusted Margin will be similar to the sum of the prior index and the Margin set forth in Section 2(e) of this Note as of such date. The most recent value of the substituted index, as announced from time to time, and such adjusted Margin shall become the Index and the Margin for purposes of Section 2 of this Note.

   (e)   Calculation of Interest Rate Changes

        Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **3.575%** percentage points (the "Margin") to the Current Index. Subject to the limit in Section 2(c), this amount will by my new interest rate until the next Interest Change Date.

3. **PAYMENTS**

   (a)   Time and Place of Payments

        I will pay principal and interest by making payments every month.

        I will make my monthly payments on the first day of each month beginning on **October 1, 2004**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **September 1, 2044**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

        I will make my monthly payments at 401 Wilshire Boulevard, Santa Monica, California 90401, or at a different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of the United States.

**RIDER TO NOTE SECURED BY DEED OF TRUST - PREPAYMENT PENALTY RIDER**

(b)  Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of

**FOUR THOUSAND NINE HUNDRED THIRTY-NINE AND 27/100**

**Dollars (U.S. $ 4,939.27).** This amount may change.

**My initial monthly payment may not constitute a "full payment" at the interest rate shown in paragraph 2 above. My initial monthly payment is calculated based on an interest rate of 2.075% . This lower payment amount will not reflect the actual interest rate that is being charged on my Note.**

(c)  Payment Change Dates

My monthly payment may change as required by Section 3(d) below beginning on the 1st day of **October, 2009,** and on that day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Sections 3(f) or 3(g) below requires me to pay the Full Payment.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Sections 3(f) or 3(g) below.

(d)  Calculation of Monthly Payment Changes

At least 25 days but not more than 120 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid principal in full on the maturity date in substantially equal installments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." The Note Holder will then calculate the amount of my monthly payment due the month preceding the Payment Change Date multiplied by the number 1.075 in the event the Full Payment is greater than such monthly payment. The result of this calculation is called the "Limited Payment." Unless Sections 3(f) or 3(g) below requires me to pay a different amount, I will pay the Limited Payment.

(e)  Additions / Reductions to My Unpaid Principal

My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient at the monthly payment date to repay the unpaid principal in full on the maturity date in substantially equal payments. If so, each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid principal. The Note Holder will also charge interest on the amount of this difference. The interest rate on the interest added to principal will be the rate required by Section 2 above.

My monthly payment could also be greater than the amount necessary to repay the principal in full on the maturity date in substantially equal payments. In that case, the Note Holder will subtract the amount of the interest portion of the monthly payment from the amount of the monthly payment and will then subtract this difference from the unpaid principal.

(f)  Limit on My Unpaid Principal; Increased Monthly Payment.

My unpaid principal can never exceed a maximum amount equal to **ONE HUNDRED TWENTY-FIVE AND 00/100 (125.00%)** of the principal amount I originally borrowed. My unpaid principal could exceed that maximum amount due to the Limited Payments and /or interest rate increases. If so, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. The new monthly payment will be in an amount which would be sufficient to repay my then unpaid principal in full on the maturity date at my current interest rate in substantially equal payments. At this time I will not have the option of paying the Limited Payment.

(g)  Required Full Payment

On **October 1, 2009,** and on the same day every five years thereafter, I will begin paying the Full Payment as my monthly payment until my monthly payment changes again. At this time I will not have the option of paying the Limited Payment. I will also begin the Full Payment as my monthly payment on the final Payment Change Date.

4.  NOTICES OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment at least 25 days before the effective date of any change. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of that whole part of one or more monthly payments which would be applied towards principal.  If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits.

## 7. LEGISLATION AFFECTING LENDER'S RIGHT

If enactment or expiration of applicable laws or regulation has the effect of rendering any provision of the Note or Deed of Trust relating to payment of interest or principal, defaults, or transfer of the property unenforceable according to its terms, the Note Holder, at its option, may require immediate payment in full of all sums secured by the Deed of Trust and may invoke any remedies permitted herein.

## 8. BORROWER'S FAILURE TO PAY AS REQUIRED

(a) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be six percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(b) Accrual of Interest on Unpaid Balance

In addition to any late charge described above and at the option of the Note Holder, all accrued interest which is not paid when due shall also bear interest at the same rate as the interest on the unpaid principal balance.

(c) Default

If I do not pay the full amount of each monthly payment on the date it is due, or if I do not keep the promises I make in this Note or the Deed of Trust securing it, I will be in default.

(d) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

(e) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(f) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 11. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 12. SECURITY

The Note is secured by a Deed of Trust dated the same date as this Note, and said Deed of Trust contains the following clause, which is incorporated herein: **"Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event of the sale or transfer of the Property to a credit worthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower."

PAGE THREE

13. CLERICAL ERRORS

In the event that the Lender at any time discovers that this Note or the Deed of Trust or any other document related to this loan (the "Loan Documents") contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender to re-execute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**BORROWER(S):**

James J. Baroni

Aliana A. Baroni

DO NOT DESTROY THIS NOTE: When paid, this Note, with the Deed of Trust securing it, must be surrendered to Trustee for cancellation before reconveyance will be made.

**FIRST FEDERAL BANK**
**OF CALIFORNIA**
**Corporate Office**
**401 Wilshire Boulevard**
**Santa Monica, CA 90401-9490**

## PREPAYMENT CHARGE RIDER TO
## NOTE SECURED BY DEED OF TRUST

This Rider is attached to and made part of that certain Note Secured by Deed of Trust (the "Note") dated **August 26, 2004** by and between

**James J. Baroni and Allana A. Baroni, husband and wife**

("Borrower"), and FIRST FEDERAL BANK OF CALIFORNIA, ("Lender" or "Note Holder"). All terms used herein shall have the meanings ascribed to such terms in the Note. To the extent the provisions contained herein conflict with any provision contained in the Note, the provisions hereof shall control.

1.   Paragraph 5 of the Note is hereby modified in its entirety to read as follows:

"5. BORROWER'S RIGHT TO REPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments.

Over the first three Loan Years, I may prepay an aggregate amount not exceeding **$ 322,000.00**   (20 percent of the original loan amount; the "Permitted Prepayment") without penalty. During the first three Loan Years, if I prepay an amount in excess of the Permitted Prepayment, I will pay to the Note Holder a prepayment charge pursuant to the following schedule:

FIRST LOAN YEAR:        **$ 24,150.00**

SECOND LOAN YEAR:    **$ 16,100.00**

THIRD LOAN YEAR:        **$ 8,050.00**

After completion of the third Loan Year, there will be no prepayment charges for any full or partial prepayments. As used in this Note, "Loan Year" means each year during the term of this Note commencing thirty days before the first payment due date.

The prepayment charge shall be payable upon a prepayment as set forth above, whether voluntary or involuntary, including but not limited to a prepayment resulting from the Note Holder's permitted acceleration of the balance due on the Note. Notwithstanding the foregoing, nothing herein shall restrict my right to prepay at any time without penalty, accrued but unpaid interest that has been added to principal.

The Note Holder may require that any partial prepayments be made on the date monthly payments are due and be in the amount of one or more monthly payments which would be applied towards principal. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not relieve me of the obligation to make the installments each and every month until the Note is paid in full. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase."

2.   Partial Reduction and Deferral of Prepayment Charge

a.   Upon Borrower's written request at time of prepayment, Lender will provide Borrower with a credit in the amount of $500.00 if an eligible new first trust deed loan that replaces this Loan ("New Loan" is obtained from Lender. If this Loan is submitted by a mortgage broker, Lender shall waive an additional amount of up to $500.00 in prepayment charges provided that the New Loan is submitted by the same mortgage broker that originally submitted this Loan to Lender. Any credits hereunder shall be in the form either of a reduction in the prepayment charge applicable to the New Loan or, at Borrower's option, a reduction in the amount of the prepayment charge payable by Borrower upon payoff of this Loan.

b.   For purposes of this paragraph, eligible New Loans are as follows:

i.   Borrower either (a) obtains a new first trust deed loan from Lender secured by the same property as this Loan (a refinance loan); or (b) obtains a new first trust deed loan from Lender secured by a different property and pays off this Loan at the same time as the New Loan closes; **and**

ii.   The new loan must be subject to a prepayment charge for the first three years of the loan term; **and**

iii. The prepayment charge on the New Loan will include the remaining dollar amount of the outstanding prepayment charge computed on this Loan, less the reduction referred to in Subsection a. above; **and**

iv. The New Loan terms will include an adjustment to the rate (if the new loan is a 3 year fixed rate interest-only product) or margin (if the new loan is a monthly ARM product) in an amount necessary to compensate the Lender on the new loan that is equivalent, in Lender's sole judgment, to the yield on this Loan.

c.  In the event that Borrower pays off this Loan in full, including payment of the prepayment charge, and within sixty days thereafter Borrower obtains a New Loan on another property from Lender, Borrower will be given a credit toward fees on the new loan in the amount referred to in Subsection a. above.

3.  Reduction of Prepayment Charge Upon Extension of New Loan to Buyer of Subject Property

At Borrower's and the buyer's written request, Lender will reduce the prepayment charge on this Loan by $500.00 ($1,000 if the same mortgage broker as Borrower used submits the loan from the buyer), if Borrower sells the property securing this Loan and the buyer finances the purchase with a new loan from Lender on the following terms and conditions:

a.  The new loan may NOT include a payment by Lender to Borrower, the buyer of the property secured by the deed of trust on this Loan, a mortgage broker or any other third parties; and

b.  The new loan must be subject to a prepayment charge on Lender's then current terms.

**This provision does not constitute a commitment to make a new loan to Borrower or to any buyer of the subject property. Any new loan shall be subject to Lender's normal underwriting, credit review, appraisal, and other lending evaluation processes. This waiver applies only to the existing Loan, and not to any new loan.**

4.  Other than as expressly modified herein, the provisions of the Note shall remain in full force and effect, according to their terms.

BORROWER(S):

James J. Baroni

Allana A. Baroni



**This page is part of your document - DO NOT DISCARD**

04 2266269

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**09/02/04 AT 08:00am**

## TITLE(S) :

FEE                                                          D.T.T

FEE $ 5⅟   F

CODE
20          D.A. FEE Code 20    $ 6

CODE
19

CODE
9

NOTIFICATION SENT $4.00

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

**THIS FORM NOT TO BE DUPLICATED**

RECORDING REQUESTED BY AND TITLE

WHEN RECORDED MAIL TO:

**FIRST FEDERAL BANK OF CALIFORNIA**
401 Wilshire Boulevard / LOAN SERVICE
Santa Monica, California 90401

04 2266269

Loan No
Title Order No

Space above this line for recorder's use

[ ] CONSTRUCTION [XX] NON-CONSTRUCTION
**Deed of Trust and Assignment of Rents
ADJUSTABLE INTEREST RATE LOAN**

**THE NOTE SECURED BY THIS DEED OF TRUST PROVIDES FOR CHANGES IN THE INTEREST RATE AND MONTHLY PAYMENTS AND MAY PROVIDE FOR THE ADDITION OF UNPAID INTEREST TO PRINCIPAL (NEGATIVE AMORTIZATION). SEE THE NOTE DESCRIBED BELOW FOR FULL DESCRIPTION OF LOAN TERMS.**

THIS DEED OF TRUST IS MADE ON          **August 26, 2004**                    The trustor is

**James J. Baroni and Allana A. Baroni, husband and wife**

("Borrower"). The trustee is SEASIDE FINANCIAL CORPORATION ("Trustee"). The beneficiary is FIRST FEDERAL BANK OF CALIFORNIA, a federally chartered savings bank and whose address is 401 Wilshire Boulevard, Santa Monica, California 90401 ("Lender", "Note Holder" or "Beneficiary").

Borrower owes Lender the principal sum of
**ONE MILLION SIX HUNDRED TEN THOUSAND AND 00/100**

                                                  **Dollars (U.S. $ 1,610,000.00).**

This debt is evidenced by Borrower's note dated the same date as this Deed of Trust ("Note") which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **09/01/2044**. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Deed of Trust; (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note; (d) the performance, if the loan secured by this Deed of Trust is a construction loan, of Borrower's covenants and agreements contained in a construction or building loan or similar agreement; (e) the performance, if the security property is subject to a lease, of the terms and conditions of any such lease; (f) compliance with the terms of any Declaration of Covenants, Conditions and Restrictions or similar instruments pertaining to the security property; (g) the performance of any agreement of Borrower to pay fees and charges to Lender whether or not set forth in this Deed of Trust; and (h) the payment of charges allowed by law for any statement regarding the obligation secured by this Deed of Trust.
For this purpose and otherwise for valuable consideration, Borrower irrevocably grants, transfers, assigns and conveys to Trustee, in trust with power of sale, in the case of a lease, the leasehold estate in and to the property described below, and the following described property located in **Los Angeles** County, California:

**AS PER LEGAL DESCRIPTION MARKED EXHIBIT 'A' ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF 2 PAGES**

Which has the address of    **3339 Via Verde Court, Calabasas, CA 91302**

                                                  ("Property Address")

**FUTURE TAX STATEMENTS MAY BE MAILED TO BORROWER AT THE ADDRESS SHOWN ABOVE**

GETHER WITH all the improvements now or hereafter erected on the property and all present and future easements, rights, rights of way, appurtenances, rents, royalties, leases, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or reafter made a part of the property. The following items are added to the Property description, and shall also constitute the Property covered by this Deed of Trust: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or sed, or intended to be used in connection with the Property, including, but no limited to, those for the purposes of supplying or stributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access ontrol apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, ashers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property. All replacements and additions are also covered by his Deed of Trust. Borrower agrees to execute and deliver, if requested by Lender, any further instruments necessary to confirm the lien of this Deed of Trust on any equipment. All of the foregoing is referred to in this Deed of Trust as the "Property".

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant, convey and assign the Property (and, if this Deed of Trust is on a leasehold, that the ground lease is in full force and effect without default on the part of either lessor or lessee thereunder), that the Property is unencumbered, except for encumbrances of record, and that Borrower will warrant and defend generally the title to the Property against all claims and demands, subject to any easements and restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, BORROWER AGREES AS FOLLOWS:

(1) **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any other charges provided in the Note and all other sums secured by this Deed of Trust.

(2) **Construction of Improvements.** Borrower will complete in a good and workmanlike manner any building or improvement or repair which may be begun on the Property, pay any costs incurred when due, and not permit any mechanic's lien against the Property nor any stop notice against loan proceeds.

(3) **Preservation and Maintenance of Property; Nuisance; Duty to Protect; Leaseholds.** Borrower shall not destroy, damage, or substantially change the Property, allow the Property to deteriorate, or abandon the Property. Borrower shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender. Borrower agrees neither to abandon nor leave unattended the Property. Borrower shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property. If this Deed of Trust is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

(4) **Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured at all times against loss by fire, hazards included within the term 'extended coverage' and any other hazards for which Lender (and, if this Deed of Trust is on a leasehold, the ground lease) requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires, with loss payable to Lender. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be subject to the approval of Lender and shall include a standard mortgage clause in favor of and in form acceptable to Lender, whether or not such insurance was required by Lender. All insurance procured by or for the benefit of Borrower pertaining to the Property, whether such insurance is required by Lender or not, shall name Lender as the loss payee. Lender shall have the right to hold all policies and renewals. Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event that Borrower obtains any new insurance policies or coverage pertaining to the Property, Borrower shall promptly notify Lender and promptly provide copies of said items. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

At least 30 days prior to the expiration of any insurance policy, Borrower shall obtain and deliver to Lender written evidence of the payment of the renewal premium. If Borrower does not deliver such evidence to Lender or if the insurance is terminated, Lender is specifically requested by Borrower to obtain insurance and include the cost as an amount due pursuant to the Note. Lender is not obligated to obtain the insurance, but if it does so, it may obtain the insurance from any insurance agency or company acceptable to it. If the Lender does obtain such insurance, the Borrower shall reimburse all sums advanced together with interest thereon at the rate of interest due according to the Note, with such reimbursement all due and payable with the next scheduled monthly payment due on the Note. The Borrower is hereby made aware of the fact that any substitute or replacement insurance procured by the Lender will likely cost much more than the insurance which could be procured by the Borrower.

Unless Lender and Borrower otherwise agree in writing, all insurance proceeds (whether or not the policy or provision was required by Lender) shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sum secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The 30-day period will begin when the notice is given.

If under paragraph 14 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to the acquisition. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the Borrower's monthly payments or change the amount of the payments.

04 2266269

(5) **Life, Health, or Accident Insurance.** If Borrower maintains life, accident or health insurance and Lender is the owner or holder of any policy of such insurance as further security hereunder. Lender may elect to pay any premiums if Borrower does not make the payment, and any amount so paid shall be secured hereby.

(6) **Taxes and Other Sums Due; Liens.** Borrower shall timely pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 7, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

If Borrower fails to make any such payment, Lender, without contesting the validity or amount, may make the payment together with any related costs, expenses, fees, or charges, and thereafter enforce all rights relating to said payment as provided to Lender by this Deed of Trust or by law. Borrower agrees to notify Lender and appropriate taxing authorities immediately upon the happening of any event which does or may effect the value of the Property, the amount or basis of the Property, or the availability of any exemption to which Borrower may be entitled, if any law is passed deducting from the value of real property for tax purposes any lien thereon, or changing in any way the laws for the taxation of deeds of trust or debts secured by deed of trust for state or local purposes, or the manner of the collection of any such taxes, including, but not limited to, the postponement of the payment of all or any part of any real or personal property taxes, which would affect this Deed of Trust, the holder of this Deed of Trust and the Note which it secures shall have the right to declare the principal sum and the interest due; provided, however, that such election shall be ineffective if Borrower is permitted by law to pay the whole of such tax in addition to all other payments required hereunder and if, prior to such specified date, does pay such tax and agrees to pay any such tax when hereafter levied or assessed against the Property, and such agreement shall be a modification of this Deed of Trust. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Deed of Trust, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien within ten days of the giving of notice.

(7) **Impounds.** Subject to applicable law and if Lender so requests, Borrower shall pay to Lender on the day monthly payments are due under the Note until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Deed of Trust; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any. These items are called 'Impounds'. Lender may estimate the Funds due on the basis of current data and reasonable estimates of future Impounds.

The Funds may be intermingled with other monies of Lender, and shall not bear interest except as required by law. If Lender requires Impounds due to Borrower's failure to timely make payments pursuant to paragraph 6, Borrower acknowledges and agrees that no interest shall be paid by Lender on such Funds. Lender shall apply the Funds to pay the Impounds. Lender shall give to Borrower all reports of Impounds as required by law. The Funds are hereby pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the Impounds, shall exceed the amount required to pay the Impounds when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments. If the amount of the Funds held by Lender is not sufficient to pay the Impounds when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 14 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

(8) **Assignment of Awards and Damages to Lender.** Borrower assigns to Lender all sums due, paid, or payable, (a) for injury to the Property: or (b) in connection with this loan transaction. Lender may, at its option, begin, intervene in, appear in or prosecute in its own name, any legal action, or make any compromise or settlement in connection therewith. If required by Lender, Borrower agrees to execute further assignments of any such compensation, award, damages, rights of action and proceeds.

(9) **Protection of Lender's Security.** If borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects the Property or title thereto or the interest of Lender therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option may make such appearances, disburse such sums and take such action as Lender deems necessary, in its sole discretion, to protect Lender's interest, including, but not limited to, (i) disbursement of funds and attorneys' fees, (ii) entry upon the Property to make repairs, (iii) procurement of satisfactory insurance as provided in paragraph 4 hereof, and (iv) if this Deed of Trust is on a leasehold, exercise of any option to renew or extend the ground lease on behalf of Borrower and the curing of any default by Borrower in the terms and conditions of the ground lease. Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Borrower of interest at such rate would be contrary to applicable law. Borrower hereby covenants and agrees that Lender shall be subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the indebtedness secured hereby. Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

(10) **Condemnation.** The proceeds of any award or claim for damages, direct or indirect, in connection with any condemnation action or proceeding, or for conveyance in lieu of condemnation are hereby assigned and shall be paid to Lender, subject, if this Deed of Trust. Said application shall not cure or waive any default or notice of default nor invalidate any act done because of such notice, nor shall said application change the due date or amount of the monthly payments due on the Note secured by this Deed of Trust.

(11) **Failure of Borrower to Comply with Deed of Trust.** If Borrower fails to make any payment or do any act provided in this Deed of Trust, Borrower will be in default.

(12) **Sums Advanced To Bear Interest.** Any sums advanced by Lender under this Deed of Trust will be secured hereby and will bear interest from the date advanced at the same rate as the debt secured by this Deed of Trust.

(13) **Application of Payments.** Subject to the terms of the Note, Lender has the right to determine how payments received will be allocated among the various items which make up Borrower's obligations to Lender.

(14) **Acceleration Clause; Right to Declare Sums Due.** Irrespective of the maturity date specified in any note or agreement pertaining to any indebtedness secured hereby, Lender shall have the right, at its option, to declare an indebtedness and obligations secured hereby immediately due and payable upon such declaration if: (a) Borrower is in default; or (b) Borrower or any successor in interest to Borrower of such Property sells, enters into a contract of sale, conveys or alienates such Property or any part thereof, or suffers his title or any interest to be divested, whether voluntarily or involuntarily or leases such Property or any part thereof for a term of more than 3 years, or changes or permits to be changed the character or use of the Property, or drills or extracts or enters into a lease for the drilling for or extracting of oil, gas or other hydrocarbon substance or any mineral of any kind or character on such Property; or (c) Borrower is a partnership and the interest of a general partner is assigned, transferred, or inherited; or (d) Borrower is a corporation and more than 25% of the corporate stock thereof is sold, transferred or assigned during a 12 month period; or (e) Borrower is a trust and there is a change of beneficial interest with respect to more than 25% of such property; or (f) Borrower has made any material misrepresentation or failed to disclose any material fact in those certain financial and other written representations and disclosures made by Borrower in order to induce Lender to enter into the transaction evidenced by the Promissory Note or notes or agreements which this Deed of Trust secures, or (g) the insolvency of Borrower, appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower, or the dissolution or termination of Borrower's existence as a good business (if Borrower is a business), or (h) any breach by Borrower under the terms of any other agreement between Borrower and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower to Lender, whether existing now or later, or (i) Lender deems itself to be financially insecure as to this transaction.

(15) **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

(16) **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** This Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14. Borrower's covenants and agreements shall be joint and several. Any person who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that person's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that person's consent.

(17) **Legislation or Regulation Affecting Lender's Rights.** If enactment or expiration of applicable laws or regulations has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted herein. If Lender exercises this option, Lender shall take the steps specified in paragraph 24.

(18) **Governing Law; Severability.** The Note and this Deed of Trust shall be governed by the laws, rules and regulations of the United States including, without limitation, the laws, rules and regulations relating to federally chartered savings banks, provided, however, that, to the extent that the Note and this Deed of Trust shall be deemed to be governed by state law, the Note and this Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

(19) **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

(20) **Right to Collect Rents and Profits/Assignment of Leases.** If Borrower is in default hereunder, Lender (in person, by agent, or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the property, and to collect the rents of the Property (including but not limited to those past due). Any rents collected by Lender or the receiver shall be applied first to costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph the word "lease" shall mean "sublease" if the Deed of Trust is on a leasehold.

(21) **Remedies.** No remedy provided by this Deed of Trust is exclusive of any other remedy allowed by law or any other writing. Instead, to the extent permitted by law, all remedies available to Lender by contract or law shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy. Without limitation, Lender reserves the right to judicially foreclose upon the Property and obtain a judgment against Borrower for any unpaid deficiency, where permitted by law.

(22) **Power of Trustee.** At Lender's request, Trustee may: (1) release any debt; (2) extend the time or alter other terms of payment of such debt; (3) accept additional security; (4) substitute or release any security property; (5) recover all or part of any security property; (6) consent to the making of any map or plat; (7) join in granting any easement on the Property; or (8) join in any extension or subordination agreement. Any such act by Trustee will not affect Borrower's liability for the payment of the debt secured by this Deed of Trust, nor will it affect the lien of this Deed of Trust on the remainder of the Property for the full amount of Borrower's debt to Lender.

(23) **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it, and may charge such fees for each full or partial reconveyance of this Deed of Trust then customarily charged for such services.

(24) **Default; Acceleration; Trustee's Sale upon Default.** For purposes of paragraph 14 and this paragraph, a default by Borrower shall mean a failure by Borrower to pay any monthly installment under the Note when due, or otherwise perform any obligation required by the Note, or a breach of any warranty of Borrower or a default in performance of any of the provisions of the Deed of Trust, or a breach or default by Borrower under any other instrument secured by the property described in the Deed of Trust. Pursuant to paragraph 14 and this accrued interest thereon and late charges and other costs and regardless of any prior notice and demand for sale and other costs and regardless of any prior notice and demand for sale and demand for sale and other costs incurred by Borrower, Lender at its option Note Holder without prior notice and late charges and other costs incurred by Borrower, Lender at its option deliver to Trustee a written declaration of default and demand for sale and other costs shall cause to be filed of record a written notice of uit and of election to cause to be sold the Property described in the Deed of Trust. Lender shall also deposit with the Trustee the or the lapse of such time as may be required by law following recordation of such notice of default and place filed by such en given and such notice of sale, either as a whole or in separate parcels, and in such order as the Trustee shall determine (subject to ustee and such notice of sale, payable at the time of sale. Trustee may sell all or any portion of such property by public announcement at th rights as Borrower may at law to direct such order of sale), at public auction to the highest bidder for cash in lawful money f the United States, payable at time of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by st such time and place of sale. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or he postponement. Trustee may postpone sale of all or any portion of such property by public announcement at the time fixed by warranty, express or implied. The recital in such deed of any matters of fact shall be conclusive proof of the truthfulness thereof. Any person, including Borrower, Trustee or Lender, may purchase at such sale. After deducting all costs, fees and expenses of Trustee, and of this Deed of Trust, including costs of evidence of title in connection with such sale, Trustee first shall apply the proceeds of sale to payment of all sums expended under the Deed of Trust, not then repaid, with accrued interest at the rate then payable under the Note or notes secured thereby, and then to payment of all other sums secured thereby and, if thereafter there be any proceeds remaining, shall distribute them to the person or persons legally entitled thereto.

(25) **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the instrument number and recording date where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law.

(26) **Waiver of Statute of Limitations.** Time is of the essence in all of Borrower's obligations. To the extent permitted by law, Borrower waives all present or future statutes of limitations with respect to any debt, demand or obligation secured by this Deed of Trust, in any action to enforce this Deed of Trust.

(27) **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. The right of inspection shall include, but is not necessarily limited to, the right to conduct tests upon and take samples of the soil, the air, and all other chemicals contained on the Property, within the subsurface of the Property, and in the air located upon the Property. If the Property is used for commercial or residential income purposes, at Lender's request Borrower shall deliver to Lender certified copies of all business records, a certified statement of gross and net annual income received from the Property during Borrower's previous fiscal year in such form and detail as Lender shall require, and any other financial statements or records relating to the Property.

(28) **Offsets.** No indebtedness secured by this Deed of Trust shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower now or hereafter may have or may claim to have against Lender, and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws), which Section provides;

"Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred with Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

(29) **Misrepresentation or Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which the Deed of Trust secures, and in the event that Borrower ha made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice, shall have th right to declare the indebtedness secured by the Deed of Trust, irrespective of the maturity date specified in the Note or note immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act there hereunder.

(30) **Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furni the statement of obligation as provided by Section 2943 of the Civil Code of California.

(31) **Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it b class mail, unless another method is required by law. The notice shall be sent to the Property address unless Borrower designa notice a different address. Any notice to Lender must be given by first class mail to Lender's address stated above unless notice a different address. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borr as provided in this paragraph, provided customary time for mail delivery shall have passed befo

(32) **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address ch is the Property Address.

(33) **Modification.** This Deed of Trust can only be modified in writing and signed by Borrower and Lender.

(34) **Loan Charges.** If a law, which applies to the loan secured by this Deed of Trust and which sets maximum loan charges, finally interpreted so that the interest or other loan charges collected or to be collected in connection with such loan exceed the ermitted limits, then any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit.

(35) **Attorneys' Fees.** Borrower agrees to pay the following costs, expenses and attorney's fees paid or incurred by Note Holder: (1) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in connection with the collection, enforcement or interpretation of the Note or this Deed of Trust, whether or not suit is filed; (2) reasonable costs of collection, expenses, and attorneys' fees paid or incurred in workout negotiations or modifications; and (3) costs of suit and attorneys; fees in such sum as the court may adjudge in any action to enforce payment of this Deed of Trust or any part of it.

(36) **Security Agreement; Financing Statements.** The following provisions relating to this Deed of Trust as a security agreement are hereby made a part of this Deed of Trust:

Security Agreement. This instrument shall constitute a security agreement to the extent any of the Property (a) constitutes fixtures; or (b) personal property of Borrower is located upon the Property, and such personal property is used to operate or maintain the Property. Lender shall have all of the rights of a secured party as to said items under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Borrower shall execute financing statements and take whatever other action is requested by Lender to perfect and continue Lender's security interest in the rents, fixtures and personal property. Borrower shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the personal property in a manner and at a place reasonably convenient to Borrower and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender.

Addresses. The mailing addresses of Borrower (debtor) and Lender (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

(37) **Hazardous Substances.** Borrower represents and warrants that, so long as this Deed of Trust remains a lien on the Property, the Property never has been, and never will be, used for the generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99,499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et. seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., the Clean Water Act, 33 U.S.C. Section 466 et. seq. the Safe Drinking Water Act, 17 U.S.C. Section 1401 et. seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601 Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 13000 and 25100, et. seq., and as subsequently amended, or other applicable state or Federal laws, rules or regulations. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste. Borrower hereby (a) releases and waives all claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify, defend and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to and/or during Borrower's ownership or interest in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust, including the obligations to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

(38) **Compliance With Laws.** Borrower warrants that the Property and Borrower's actual or intended use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

(39) **Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

(40) **Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

(41) **Assumptions.** During the term of the Note, the Lender shall not exercise its right to declare all sums due, as provided in paragraph 14 of this Deed of Trust, in the event the sale or transfer of the Property to a creditworthy buyer so long as such buyer applies for the assumption of the loan in advance of accepting title to the Property, and so long as the buyer, in the Lender's sole and absolute judgment, qualifies for the loan evidenced by the Note, executes an assumption agreement acceptable to Lender, and pays Lender any fees required by Lender assessed in connection with an assumption; and so long as the loan is current and the Property qualifies for the loan at the same or lower loan to value ratio than the original loan balance bore to the then fair market value of the Property. The Note may not be assumed unless the legal and beneficial title to the Property has at all times remained with Borrower This paragraph 41 shall be effective only if a substantially similar provision is contained in the Note secured by this Deed of Trust.

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit together with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of la improved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned development ("PUD"), Borrower and Lender further covenant and agree as follows:

(42) **Condominium or Planned Unit Development Provisions.** In the event that the Property comprises (i) a unit in, jether with an undivided interest in the common elements of, a condominium project ('Condominium Project') or (ii) a parcel of land proved with a dwelling, which, together with other such parcels and certain common areas and facilities, forms a planned unit ivelopment ("PUD"), Borrower and Lender further covenant and agree as follows:

(a) **Assessment and Obligations.** Borrower shall promptly pay, when due, all assessments imposed by the Owner association, Homeowners' Association, or other governing body of the Condominium Project or PUD ("Owners' Association"). orrower shall perform all of Borrower's obligations under the provisions of the Declaration, Trust Instrument, Articles of Incorporation, 3y-laws, Code of Regulations or other constituent document of the Condominium Project or PUD (the "Instrument").

(b) **Hazard Insurance.** In the case of a Condominium Project, so long as the Owners' Association maintains a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term 'extended coverage' and such other hazards as Lender may require, and in such amounts and for such periods as Lender may require, then: (1) Borrower's obligation under paragraph 4 hereof of maintain hazard insurance coverage on the Property is deemed satisfied; and (2) the provisions of paragraph 4 hereof regarding application of hazard insurance proceeds shall be superseded by any provision of the Instrument or of applicable law to the extent necessary to avoid a conflict between such provisions and the provisions of paragraph 4 hereof. For any period of time during which such hazard insurance coverage is not maintained, the immediately preceding sentence shall be deemed to have no force or effect. Borrower shall give Lender prompt notice of any lapse in such hazard insurance coverage.

In the case of a Condominium Project or PUD, in the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss, in the case of a Condominium Project, to the Property, whether to the unit or to common elements, or, in the case of a PUD, to the common areas and facilities of the PUD, any such proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.

(c) **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

(d) **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the common areas and facilities, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sum secured by this Deed of Trust in the manner provided in paragraph 10 hereof.

(e) **Lender's Prior Consent.** Borrower shall not, except with notice to Lender and with Lender's prior written consent, consent to: (1) the abandonment or termination provided by law in the case of substantial disruption by fire or other casualty or in the case of a taking by condemnation or eminent domain; (2) any material amendment to the instrument of the Condominium Project or PUD, including, but not limited to, any amendment that would change the percentage interest of the unit owners in the common areas and facilities of the Condominium Project or PUD; (3) the effectuation of any decision by the Owners' Association to terminate professional management and assume self-management of the Condominium Project or PUD; (4) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lenders; or (5) in the case of a PUD, the transfer, release, encumbrance, partition or subdivision of all or part of the PUD's common areas and facilities, except as to the Owners' Association's right to grant easements for utilities and similar or related purposes.

(43) **Construction Loan Provisions.** If all or any portion of the proceeds of the loan secured by this Deed of Trust are to be used for construction of improvements on the Property covered by the Deed of Trust, the following additional provisions shall apply unless otherwise specified in the Note: Borrower agrees: (1) to commence construction promptly and in any event within thirty (30) days from recordation of the Deed of Trust, and to complete the same in accordance with plans and specifications satisfactory to Lender and to comply with all the provisions of the building loan or similar agreement entered into with Lender; (2) to allow Lender to inspect the security property at all times during construction; (3) to replace any work or materials unsatisfactory to Lender within fifteen (15) calendar days, after notice from Lender of such fact, which notice may be given to Borrower by registered or certified mail, sent to Borrower's last known address, or by personal service of the same; (4) not to suffer or permit any cessation of work on the construction of such improvements for any reason whatsoever for a period of fifteen (15) calendar days, whether consecutive or not without the written consent of Lender; and (5) to promptly pay all claims for labor performed and materials furnished in connection with the said construction and not to permit any claims or lien for said work or material to be filed of record against the security property. If the security property is a part of a larger tract upon which improvements shall be constructed, Borrower shall make separate contracts and subcontracts for said construction which shall pertain to the security property only and shall keep separate, full and complete records of all work and materials furnished to such property. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive the facts and statements therein, and to act thereon hereunder.

(44) **Adjustable Rate Mortgage Provisions.** The Note secured by this Deed of Trust may contain provisions that permit: (i) increases and decreases to the rate of interest provided in the Note on a periodic basis, (ii) increases and decreases to the monthly payment of principal and interest on a periodic basis; (iii) limitations on increases in the rate of interest, and may contain provisions that permit: (iv) limitations on increases and decreases in the monthly payment of principal and interest on a periodic basis; and (v) additions of unpaid interest to the outstanding principal balance of the loan evidenced by the Note, with interest thereon. Reference is made to the Note for a complete description of the adjustable rate terms of the indebtedness secured by this Deed of Trust.

(45) Borrower shall not, without prior written consent of Lender, consent to or vote in favor of the establishment, approval or creation of, or incorporation of the Property into, any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by the landowner. Borrower further agrees to provide prompt written notice to Lender immediately upon receipt of any information which indicates that the Property is or may in the future be included in any Community Facilities District, Mello Roos District, or any other district or organization in which public improvements are financed via bonds or public funds, and repaid by landowners.

04 2266269

9/2/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

BORROWER(S):

_____

James J. Baroni

_____

Allana A. Baroni

04 2266269

# ACKNOWLEDGMENT

STATE OF _CALIFORNIA_ )
  ) SS.
COUNTY OF _LOS ANGELES_ )

On _AUG. 27. 04_ , before me, _JOHN H NIKOYAN_ ,

personally appeared _JAMES J. BARONI_ AND

_ALANA A. BARONI_

~~personally known~~ to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**WITNESS** my hand and official seal.

_____ (Seal)
  JOHN H NIKOYAN

JOHN H. NIKOYAN
Commission # 1460031
Notary Public - California
Los Angeles County
My Comm. Expires Jan 31, 2008

This Certificate must be attached to:

Title or type of Document: _DEED OF TRUST_

Number of pages: _9_

Date of document: _AUG 26 04_

Signer(s) other than named above: _____

04 2266269

ORDER NO █████████

# EXHIBIT "A"

Parcel 1:

Lot(s) 13 of Tract No. 49594, in the County of Los Angeles, State of California, as per map recorded in Book 1219 Page(s) 11 through 18 inclusive of Maps, in the office of the County Recorder of said County.

EXCEPT therefrom all oil, gas, minerals, and other hydrocarbon substances lying below a depth of 500 feet, but with no right of surface entry, as provided in deed recorded November 23, 1988 as Instrument No. 88-1888286, Official Records.

Parcel 2:

Non-exclusive easements as such easements are described in the sections entitled "Certain Rights and Easements Reserved to Declarant and Declarant Assignees", Certain Easements for Owners" and "Support, Settlement, Encroachment and Drainage" of the article entitled "Easements" of the certain document entitled "Declaration of Covenants, Conditions and Restrictions and Reservations of Easements  for Calabasas Park Estates, a Planned Residential Development" recorded March 11, 1988 as Instrument No.  88-335572, Official Records of said County as amended by the "First Amendment to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements  for Calabasas Park Estates, a Planned Residential Development" recorded April 19, 1988 as Instrument No.  88-533771, Official Records of said County, the "Second Amendment  of Covenants, Conditions and Restrictions and Reservation of Easements for Calabasas Park Estates, a Planned Residential Development" recorded May 31, 1988 as Instrument No.  88-862776, Official Records of said County, the "Third Amendment to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Calabasas Park Estates, a Planned Residential Development (Tract 35396)" recorded July 29, 1988 as Instrument No.  88-1200785,Official Records of said County, the "Fourth Amendment to the Declaration of Covenants, Conditions and Restrictions and Reservation of Easements for Calabasas Park Estates, a Planned Residential Development" recorded March 10, 1989 as Instrument No.  89-382140, Official Records of said County, and any additional amendments thereto now or hereafter recorded and any Supplementary Declaration now or hereafter recorded pursuant thereto

Parcel 3:

An easement for ingress, egress, access, wrought  iron fencing landscaping, irrigation and drainage together with the right  to grant such easements to future owners over that portion of Lot 34 of Tract No. 49594, in the City of Calabasas, County of Los Angeles, State of California, as per  map recorded in Book 1229 Pages 53 through 60 inclusive of Maps, in the office of the County Recorder of said County legally described as follows:

Beginning at the most Northwesterly corner of Lot 13 , of said Tract No. 49594, thence South 68° 35' 00" East, 16.65 feet; to a point on a non-tangent curve concave Southwesterly, having a radius of  208.00 feet, said point is the Southwest corner of said Lot 13, a radial line to said point bears North 82° 06' 44" East; thence Northeasterly along said curve through a central angle of 12° 30' 41" an arc distance of 45.42 feet to the beginning of a compound curve concave Southwesterly, having a radius of 1366.00 feet, said point being on the Southwesterly

3
04 2266269

ORDER NO

line of said lot radial line to said point bears North 69° 36' 03" East; thence Northwesterly along last said curve through a central angle of 29° 04' 56" an arc distance of 69.03; feet to the point of beginning.

**EXHIBIT "2"**

# ALLONGE TO NOTE

Loan Number: 49673183K

For the purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said note.

| | |
|---|---|
| Original Loan Amount: | $1,610,000.00 |
| Note Date: | 08/26/2004 |
| Borrower: | JAMES J BARONI & ALLANA A BARONI |
| Property address: | 3339 VIA VERDE COURT |
| | CALABASAS, CA 91302 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WITHOUT RECOURSE PAY TO THE ORDER OF:

_____

OneWest Bank, FSB



_____
Authorized Signer

CRYSTAL MOORE 3rd Party Authorized Signatory - Nationwide Title Clearing

OWBFA 11621309 ALLONGE_OWBFA

*11621309*

EXHIBIT    3
Date: 1-25-13
Johnson
T. WOLFE, CSR 8110

OWB_BARONI_000007

**EXHIBIT "3"**

# ALLONGE TO NOTE

Loan Number: 49673183J

For the purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said note.

| | |
|---|---|
| Original Loan Amount: | $1,610,000.00 |
| Note Date: | 08/26/2004 |
| Borrower: | JAMES J BARONI & ALLANA A BARONI |
| Property address: | 3339 VIA VERDE COURT |
| | CALABASAS, CA 91302 |

**************************************************

WITHOUT RECOURSE PAY TO THE ORDER OF:
OneWest Bank, FSB

FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for First
Federal Bank of California, a Federal Savings Bank, Santa Monica, CA

_____
Authorized Signer

CRYSTAL MOORE ATTORNEY-IN-FACT

OWBFA 11612394 ALLONGE_OWBFA

*11612394*

EXHIBIT 4
Date: 1-25-13
Johnson
T. WOLFE, CSR 8110

OWB_BARONI_000008

**EXHIBIT "4"**

# PURCHASE AND ASSUMPTION AGREEMENT

## WHOLE BANK

## ALL DEPOSITS

AMONG

**FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER OF FIRST FEDERAL BANK OF CALIFORNIA, A FEDERAL SAVINGS
BANK,
SANTA MONICA, CALIFORNIA**

**FEDERAL DEPOSIT INSURANCE CORPORATION**

and

**ONEWEST BANK, FSB**

DATED AS OF

**DECEMBER 18, 2009**

First Federal Bank of California, a Federal Savings Bank
Santa Monica, California



EXHIBIT 1
Date: 1-25-13
Johnson
T. WOLFE, CSR 8110

OWB_BARONI_000043

## ARTICLE V
## DUTIES WITH RESPECT TO DEPOSITORS OF THE FAILED BANK

**5.1**    **Payment of Checks, Drafts and Orders.** Subject to Section 9.5, the Assuming Bank agrees to pay all properly drawn checks, drafts and withdrawal orders of depositors of the Failed Bank presented for payment, whether drawn on the check or draft forms provided by the Failed Bank or by the Assuming Bank, to the extent that the Deposit balances to the credit of the respective makers or drawers assumed by the Assuming Bank under this Agreement are sufficient to permit the payment thereof, and in all other respects to discharge, in the usual course of conducting a banking business, the duties and obligations of the Failed Bank with respect to the Deposit balances due and owing to the depositors of the Failed Bank assumed by the Assuming Bank under this Agreement.

**5.2**    **Certain Agreements Related to Deposits.** Subject to Section 2.2, the Assuming Bank agrees to honor the terms and conditions of any written escrow or mortgage servicing agreement or other similar agreement relating to a Deposit liability assumed by the Assuming Bank pursuant to this Agreement.

**5.3**    **Notice to Depositors.**

(a)    Within seven (7) days after Bank Closing, the Assuming Bank shall give (i) notice to depositors of the Failed Bank of its assumption of the Deposit liabilities of the Failed Bank, and (ii) any notice required under Section 2.2, by mailing to each such depositor a notice with respect to such assumption and by advertising in a newspaper of general circulation in the county or counties in which the Failed Bank was located. The Assuming Bank agrees that it will obtain prior approval of all such notices and advertisements from counsel for the Receiver and that such notices and advertisements shall not be mailed or published until such approval is received.

(b)    The Assuming Bank shall give notice by mail to depositors of the Failed Bank concerning the procedures to claim their deposits, which notice shall be provided to the Assuming Bank by the Receiver or the Corporation. Such notice shall be included with the notice to depositors to be mailed by the Assuming Bank pursuant to Section 5.3(a).

(c)    If the Assuming Bank proposes to charge fees different from those charged by the Failed Bank before it establishes new deposit account relationships with the depositors of the Failed Bank, the Assuming Bank shall give notice by mail of such changed fees to such depositors.

## ARTICLE VI
## RECORDS

**6.1**    **Transfer of Records.**

(a)    In accordance with Sections 2.1 and 3.1, the Receiver assigns, transfers, conveys

OWB_BARONI_000071

and delivers to the Assuming Bank the following:

(i)    all Records pertaining to the Deposit liabilities of the Failed Bank assumed by the Assuming Bank under this Agreement, including, but not limited to, the following:

(A)    signature cards, orders, contracts between the Failed Bank and its depositors and Records of similar character;

(B)    passbooks of depositors held by the Failed Bank, deposit slips, cancelled checks and withdrawal orders representing charges to accounts of depositors; and

(ii)    all Records pertaining to the Assets, including, but not limited to, the following:

(A)    records of deposit balances carried with other banks, bankers or trust companies;

(B)    Loan and collateral records and Credit Files and other documents;

(C)    deeds, mortgages, abstracts, surveys, and other instruments or records of title pertaining to real estate or real estate mortgages;

(D)    signature cards, agreements and records pertaining to Safe Deposit Boxes, if any; and

(E)    records pertaining to the credit card business, trust business or safekeeping business of the Failed Bank, if any.

(b)    The Receiver, at its option, may assign and transfer to the Assuming Bank by a single blanket assignment or otherwise, as soon as practicable after Bank Closing, any other Records not assigned and transferred to the Assuming Bank as provided in this Agreement, including but not limited to loan disbursement checks, general ledger tickets, official bank checks, proof transactions (including proof tapes) and paid out loan files.

6.2    **Delivery of Assigned Records**. The Receiver shall deliver to the Assuming Bank all Records described in (i) Section 6.1(a) as soon as practicable on or after the date of this Agreement, and (ii) Section 6.1(b) as soon as practicable after making any assignment described therein.

6.3    **Preservation of Records**. The Assuming Bank agrees that it will preserve and maintain for the joint benefit of the Receiver, the Corporation and the Assuming Bank, all Records of which it has custody for such period as either the Receiver or the Corporation in its discretion may require, until directed otherwise, in writing, by the Receiver or Corporation. The Assuming Bank shall have the primary responsibility to respond to subpoenas, discovery

Module 1 – Whole Bank w/ Loss Share – P&A
Version 1.12
November 17, 2009

26

First Federal Bank of California, a Federal Savings Bank
Santa Monica, California

OWB_BARONI_000072

**EXHIBIT "5"**

# Deutsche Bank

1761 East St. Andrew Place
Santa Ana, CA 92705-4934

Tel  714 247 6000
Fax  714 247 6009

*RECEIVED*
*Deutsche*
SEP 2 8 2011
*UPS*
*LEGAL DEPT*

September 27, 2011

JENNIFER GRAY
ONEWEST BANK
888 E WALNUT STREET

PASADENA, CA  91011

Dear Sir/Madam:

Per your request, we are enclosing the documents/files relating to the loans identified on the attachment.

**Note:**

*It is extremely important that you review the contents of this package promptly to verify that you have received all documents. If we do not hear from you within 5 working days from the date shown above, we will assume the delivery is complete.*

Should you have any questions regarding this matter, please contact the undersigned.

Sincerely,

Grace Lee-Avery
Phone  (714)247-6153
Mortgage Custody
Department

# *IMMEDIATE RESPONSE REQUIRED*



EXHIBIT  8
Date: 1-25-13
Johnson
T. WOLFE, CSR 8110

8-1

**Issue: OW09BC**

ONEWEST BANK

**Trust & Security Services**
Transmittal Letter

**Deutsche Bank** 

**09/27/2011**

| JENNIFER GRAY | | 888 E WALNUT STREET | | PASADENA | CA 91011 | Airbill: 1ZR4A6911350594189 |
|---|---|---|---|---|---|---|
| **Loan Number** 00000000000006153397 | **Alternate Number** 0000000000049673183 | **Name** JAMES J BARONI | | **Document** FILE | **Reason** LITIGATION | **Authorizer** PAMELA OTA |

Number of Items per Issue: 1

Page 1 of 1

ra

1/27/2011

B-2

In re Allana A. Baroni,

Chapter 11

Debtor(s)

Bankr. Case No. 1:12-bk-10986-AA

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Law Offices of Louis J. Esbin
25129 The Old Road, Suite 114, Stevenson Ranch, California 91381

A true and correct copy of the foregoing document described **ADVERSARY COMPLAINT TO: 1. DETERMINE THE NATURE, EXTENT   AND VALIDITY OF LIEN / DECLARATORY   RELIEF [Fed.R.Bank.P. 7001, 28 U.S.C. §2201; 2.  QUASI CONTRACT / UNJUST   ENRICHMENT; 3. VIOLATION OF 15 U.S.C. §1692, ET SEQ.; 4.  VIOLATION OF 12 U.S.C. § 2605; 5.   VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION §17200, ET SEQ.; 6. ACCOUNTING - DEMAND FOR JURY TRIAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On November 15, 2013, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Louis J. Esbin (esbinlaw@sbcglobal.net)
Mark Domeyer (mdomeyer@mileslegal.com)

Gilbert Yabes (ch11ecf@piteduncan.com)
Kristin S. Webb (bknotice@rcolegal.com)
Ali Matin (amatin@bmkattorneys.com)
Andy Goodman (agoodman@greenbass.com)

Adam Barasch (anb@severson.com)
Stefanie Schiff (stefanie.schiff@akerman.com)
Linda Blank (linda@lmblank.com)

United States Trustee (ustpregion16.wh.ecf@usdoj.gov)
Daniel K. Fujimoto (wdk@wolffirm.com)

Cassandra J Richey (cmartin@pprlaw.net)
S Margaux Ross (margaux.ross@usdoj.gov)
Robert Reganyan (reganyanlawfirm@gmail.com)
J. Alexandra Rhim (arhim@dykema.com)

❑  Service information continued on attached page

**2.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On November 15, 2013, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Alan M Ahart, Crtrm 303
Woodland Hills, CA 91367

❑  Service information continued on attached page

Allana Baroni
3339 Via Verde Ct., Calabasas, CA 91302

**3.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on November 15, 2013, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Ian S. Landsberg (ilandsberg@landsberg-law.com)        ❑  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| November 15, 2013 | Louis J. Esbin | /s/ Louis J. Esbin |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**