FILED & ENTERED

SEP 29 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Ogier        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>ALLANA BARONI,<br><br>                      Reorganized Debtor. | Case No.: 1:12-bk-10986-MB<br><br>Chapter 11<br><br>Adv. Proc. No.   1:13-ap-01249-MB |
| ALLANA BARONI,<br><br>    Plaintiff,<br><br>         vs.<br><br>ONEWEST BANK, FSB,<br><br>    Defendant. | **OPINION RE MOTION FOR<br>ATTORNEYS' FEES<br>[ADV. DKT. NO. 345]** |
| ONEWEST BANK, FSB,<br><br>    Counterclaimant,<br><br>         vs.<br><br>ALLANA BARONI,<br><br>    Counterdefendant. | |

# I. INTRODUCTION

In April 2013, individual debtor Allana Baroni obtained confirmation of her second amended chapter 11 plan (the "Plan"). Case Dkt. 423. Seven months after the entry of the confirmation order, Allana[1] filed this adversary proceeding, objecting to a secured claim asserted by OneWest Bank N.A. (now known as CIT Bank, N.A., "OneWest") in the approximate amount of $1.8 million. Adv. Dkt. 1. OneWest answered and filed a counterclaim (the "Counterclaim"). Adv. Dkt. 15, 16. Approximately one year later, the court entered summary judgment in favor of OneWest on Allana's complaint (the "Complaint"), leaving only the Counterclaim to be resolved. Thereafter the court entered summary judgment in favor of OneWest on its Counterclaim.

Shortly thereafter, OneWest filed a motion seeking attorneys' fees of $498,113 (the "Fee Motion"). Adv. Dkt. 345, 364, 367. OneWest's attorneys' fee entitlement arises under the terms of the promissory note and deed of trust on which its secured claim is based – *prepetition* contracts, but all of the fees requested were incurred *postconfirmation*.[2] Allana argues that, based on the language of the deed of trust, the attorneys' fee award must be added to the balance of the loan underlying OneWest's proof of claim. Adv. Dkt. 366. OneWest argues that the attorneys' fee award should not be treated as part of OneWest's prepetition claim but instead be immediately due and payable by Allana. Adv. Dkt. 345, 364. OneWest relies on *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018 (9th Cir. 2005) and *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), in which the court took a different approach, holding that an attorneys' fee award against a chapter 7 debtor should not be treated as a prepetition claim subject to discharge, when the debtor voluntarily commenced the litigation postpetition or "returned to the fray" of litigation commenced prepetition.

---

[1] For the sake of clarity, we refer to Allana and her husband, James Baroni, by their first names. No disrespect is intended.

[2] OneWest's attorneys' fee motion originally included fees of $164,834 incurred in the main bankruptcy case, a significant portion of which was incurred prior to confirmation. This opinion only pertains to attorneys' fees incurred in this adversary proceeding (including three related appeals) and awarded pursuant to Rule 7054 of the Federal Rules of Bankruptcy Procedure.

1    For the reasons set forth below, the court concludes that OneWest's attorneys' fee award

2  should be treated as part of its prepetition claim against Allana, subject to treatment and discharge

3  under the Plan.  In *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826 (9th Cir. 2009),

4  the Ninth Circuit established general principles applicable to an attorneys' fee award arising out of

5  prepetition agreements, holding that it is properly treated as a prepetition claim, even when the

6  attorneys' fees were incurred litigating *after* confirmation of the debtor's chapter 11 plan.  *Id.* at

7  843-44.   The court relied in part on the Ninth Circuit's "fair contemplation" test to determine that

8  the claim for attorneys' fees arose prior to the petition date, even though the claim was then

9  unliquidated and contingent.  Although *Siegel* and *In re Ybarra* represent an exception to these

10  general principles, the exception recognized in those cases does not apply to the facts and

11  circumstances presented here.  As explained below, this conclusion is further supported by the

12  Ninth Circuit's decision in *Picerne Const. Corp. v. Castellino Villas, A.K.F. LLLC (In re Castellino*

13  *Villas, A.K.F. LLC)*, 836 F.3d 1028 (9th Cir. 2016) [hereinafter "*In re Castellino Villas*"].

14                          **II.  JURISDICTION**

15    The court has jurisdiction over this case, the above-captioned adversary proceeding and the

16  Fee Motion pursuant to 28 U.S.C. § 1334(b).  These matters have been referred to this court

17  pursuant to 28 U.S.C. § 157.  This adversary proceeding and the Fee Motion are core matters

18  pursuant to 28 U.S.C. § 157(b)(2)(A),(B),(O).  The Court finds that it has constitutional authority to

19  enter final judgment on the instant motion.  *See Stern v. Marshall*, 131 S.Ct. 2594 (2011).

20                  **III. FACTUAL AND PROCEDURAL BACKGROUND**

21    In 2004, Allana and James refinanced their real property located at 3339 Via Verde Court,

22  Calabasas, California (the "Property"), executing a promissory note in the approximate amount of

23  $1.6 million (the "Note") and a deed of trust ("DOT") securing repayment of the Note.  In 2011,

24  Allana and James defaulted on the Note and, by 2012, were facing foreclosure.  Allana and James

25  filed an action against OneWest in Los Angeles Superior Court challenging that OneWest owned

26  the Note.  When the state court denied their request to enjoin the foreclosure sale, Allana

27  commenced this bankruptcy case on February 1, 2012.

28

On March 27, 2012, OneWest filed its Proof of Claim in this matter, in the amount of $1,860,964.23 (Claim 3-1, the "Claim"), to which OneWest attached the Note and DOT.  On April 15, 2013, the Court confirmed the chapter 11 plan proposed by Allana (the "Plan"), over the objection of OneWest.   The Plan contemplates, *inter alia*, that Allana would file a post-confirmation adversary proceeding disputing the OneWest claim and, pending a final adjudication of that dispute, make plan payments into a reserve account.  Allana discloses and preserves potential causes of action regarding the OneWest Claim in Exhibit 2 to her Plan, expressly disclosing that she has potential claims for [a] Violations of the Real Estate Settlement and Procedures Act (RESPA); 12 U.S.C. § 2601 et seq., [b] Violations of the Truth-in-Lending Act (TILA) 15 U.S.C. § 1638, [c] Violations of the Fair Debt Collection Practices Act (FDCPA); 15 U.S.C. § 1692 et seq., [d] Violations of Fair Business and Profession Code, [e] Fraudulent Inducement, [f] Negligence, [g] Intentional Infliction of Emotional Distress, [h] Breach of Fiduciary Duties, [i] Wrongful Foreclosure, [j] Slander of Title, [k] Common Law Fraud and [l] Unjust Enrichment.

Allana objected to the Claim by way of an adversary Complaint, which she filed on November 15, 2013.  In her Complaint, Allana alleged that OneWest lacked the authority to enforce the Note and DOT.   On January 17, 2014, OneWest filed an answer to the Complaint (the "Answer") and a counterclaim (the "Counterclaim") seeking a declaratory judgment that OneWest (i) may enforce the Note and (ii) holds an allowed secured claim under the Bankruptcy Code based on the Note and DOT.  On December 4, 2014, the court granted the motion for summary judgment filed by OneWest with respect to each and every claim in the Complaint, leaving only the Counterclaim to be adjudicated.   The court held that "OneWest has shown that it is in possession of the Note, thus OneWest may file a proof of claim in this bankruptcy and enforce the Note" and also held that the "Deed of Trust was validly assigned by the FDIC to OneWest." Adv. Dkt. 129. On January 19, 2016, the court granted OneWest's motion for summary judgment with respect to all of the remaining counterclaims and, on that same date, entered judgment in favor of OneWest. Adv. Dkt. 296, 298, 299.  The court once again held that OneWest is entitled to enforce the DOT. Adv. Dkt. 299.

1       During the course of this adversary, Allana filed three appeals of interlocutory orders, all of

2   which were dismissed by the District Court (case numbers 2:14-cv-07842, 2:14-cv-08035, and

3   2:15-cv-00235).  Allana also appealed from the order granting OneWest summary judgment on its

4   Counterclaim, and the final judgment, which the District Court affirmed on October 3, 2016 (case

5   number 2:16-cv-00829).  Allana's appeal from the judgment is currently pending before the Ninth

6   Circuit Court of Appeals (case number 16-56618).

7       On December 31, 2014, after the court entered summary judgment on the Complaint but

8   prior to adjudication of the Counterclaim, OneWest filed a motion for attorneys' fees based on an

9   attorneys' fee provision in the DOT.[3]  On May 13, 2015, the court denied this initial motion

10  without prejudice pending resolution of the Counterclaim.  Shortly after the court entered summary

11  judgment in favor of OneWest on its Counterclaim, OneWest filed the Fee Motion, which included

12  fees incurred by OneWest in connection with matters in the main bankruptcy case as well as this

13  adversary proceeding.  The Fee Motion also incorporated by reference legal arguments made by

14  Wells Fargo N.A. ("Wells Fargo") in a related adversary proceeding regarding why OneWest's fees

15  should not be added to its prepetition claim.[4]  At the initial hearing on the Fee Motion, the court

16  directed OneWest to file a supplemental brief separating out the fees incurred in this adversary.

17  OneWest complied and, based on its supplemental briefing, seeks fees in the amount of $498,113,

18  which includes fees incurred in connection with the three dismissed appeals from interlocutory

19  orders but does not include fees incurred in connection with the final judgment.

20      In opposition to the Fee Motion, as supplemented by OneWest, Allana argues that any

21  attorneys' fees incurred to enforce the Note or DOT must be added to the balance of the loan rather

22  than stated in a separate and immediately payable order.  Adv. Dkt. 354, 366.  Allana also contends

23  the amount of the fees is unreasonable.  Adv. Dkt. 366.  OneWest contends that its fees were

24

25

26  [3]  *See* POC 3-1, DOT at ¶ 35.

27  [4]  *See Baroni v. Wells Fargo, N.A.*, 1:13-ap-01071-MB and *Baroni v. Wells Fargo Bank, N.A. (In re Baroni)*, 2017 WL 3014268 (B.A.P. 9th Cir. July 14, 2017).

28

reasonable in light of a series of frivolous appeals and frivolous motion practice pursued by Allana during the course of this adversary proceeding.  Adv. Dkt. 367.

## IV.  STATUTORY BACKGROUND

The provisions of a confirmed chapter 11 plan generally bind the debtor and all of the debtor's creditors, regardless of whether the creditors' claims are impaired under the plan or whether or not the creditors have accepted the plan.  *See* 11 U.S.C. § 1141(a).  Except as otherwise set forth in the plan or order confirming the plan, the confirmation order generally vests in the debtor all of the property of the estate free and clear of all claims, *see* 11 U.S.C. § 1141(b), (c),[5] and

> [d]ischarges the debtor from any debt that arose before the date of such confirmation . . . whether or not—
>
> (i)      a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>
> (ii)     such claim is allowed under section 502 of this title; or
>
> (iii)    the holder of such claim has accepted the plan . . . .

11 U.S.C. § 1141(d)(1)(A).[6]  Typically, this discharge is described as being given "in exchange" for the treatment of pre-confirmation claims provided and other rights afforded creditors under the chapter 11 plan.  *See, e.g.*, *In re Asarco LLC*, 420 B.R. 314, 371 (S.D. Tex. 2009); *In re Trans World Airlines*, 185 B.R. 302, 322 (Bankr. E.D. Mo. 1995).

In a chapter 11 case for an individual, subject to certain exceptions not applicable here,[7] the discharge applies to the same universe of claims (i.e., those that arise before the date of

_____

[5]  Bankruptcy Code sections 1141(a) and (c) are subject to certain other exceptions set forth in subsections 1141(d)(2) and (d)(3), but those exceptions are not applicable here.  *See* 11 U.S.C. §§ 1141(a), (c), (d).

[6] *See In re Castellino Villas*, 836 F.3d at 1033 n.3 (chapter 11 discharge applies to debts arising before confirmation, although cases sometimes refer to the discharge of prepetition debts).

[7]  *See* 11 U.S.C. § 1141(d)(6).

1    confirmation) and operates in the same manner, but the granting of the discharge is delayed.  In an

2    individual chapter 11 case, "unless after notice and a hearing the court orders otherwise for cause,

3    confirmation of the plan does not discharge any debt provided for in the plan until the court grants

4    a discharge on completion of all payments under the plan."  11 U.S.C. § 1141(d)(5).

5        The discharge in a chapter 7 case operates differently.  *See generally* 11 U.S.C. § 727.

6    First, the discharge in a chapter 7 case generally applies only to debts that arise before the entry of

7    an order for relief or are determined under Bankruptcy Code section 502.  11 U.S.C. § 727(b).[8]  In

8    a voluntary chapter 7 case the debtor's filing of a voluntary petition (i.e., the commencement of the

9    case) is deemed to constitute an order for relief.  11 U.S.C. § 301.  The discharge in a voluntary

10   chapter 7 case therefore, applies only to debts that arise prepetition or are deemed prepetition under

11   Bankruptcy Code section 502.[9]

12       Second, the court is required in a chapter 7 case to issue a discharge upon the expiration of

13   the time fixed for objecting to the debtor's discharge or for filing a motion to dismiss the case

14   under Federal Rule of Bankruptcy Procedure 1017(e), unless one of several prerequisites has not

15   been satisfied.  *See* Fed. R. Bankr. P. 4004(c)(1).  Thus, issuance of the discharge in chapter 7 is

16   not tied to the confirmation or implementation of any plan -- nor is the distribution of any assets.

17   To the extent there are estate assets to distribute in a chapter 7 case, they are distributed pursuant to

18   the priority scheme set forth in Bankruptcy Code section 726, not pursuant to a plan.  11 U.S.C.

19   § 726.

20       Under both chapter 7 and chapter 11, the term "debt" means "liability on a claim."  11

21   U.S.C. § 101(12).  The term "claim" is broadly defined to mean "a right to payment, whether or not

22   _____

23   [8] *See, e.g.,* 11 U.S.C. §§  502(e)(2)(g), 502(f), 502(h), 502(i).

24   [9]  In an involuntary case, an order for relief is not entered until and unless the court determines it
     should do so, either because the alleged debtor fails to answer the involuntary petition, or after a
25   trial on the merits.  11 U.S.C. § 303(h).  Thus, in an involuntary case, a claim that arises prior to the
     order for relief is *not* synonymous with a claim that arises before the commencement of the case—
26   although certain pre-order-for-relief claims are determined as if they were prepetition claims.  *See*
27   11 U.S.C. § 502(f).

28

1   such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

2   disputed, undisputed, legal, equitable, secure, or unsecured. . . .“ 11 U.S.C. § 101(5)(A).  “A claim

3   is ‘contingent’ when ‘the debtor will be called upon to pay [it] only upon the occurrence or

4   happening of an extrinsic event which will trigger the liability of the debtor to the alleged

5   creditor.’” *In re Castellino Villas,* 836 F.3d at 1033 (quoting *In re Fostvedt,* 823 F.2d 305, 306 (9th

6   Cir. 1987)).  “A claim is ‘unliquidated’ when it is not ‘subject to ready determination and precision

7   in computation of the amount due.’” *Id.*

8       Whether a claim exists generally is determined as of the date of the filing of the bankruptcy

9   petition, irrespective of whether the claim is contingent or unmatured at the time.  *See* 11 U.S.C.

10  § 502(b)(1); *In re SNTL Corp.,* 571 F.3d at 838.  “[T]he Bankruptcy Code utilizes [the] ‘broadest

11  possible definition’ of claim to ensure that ‘all legal obligations of the debtor, *no matter how*

12  *remote or contingent,* will be able to be dealt with in the bankruptcy case.” *In re SNTL Corp.,* 571

13  F.3d at 838 (quoting *Cal. Dep’t of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929-30

14  (9th Cir. 1993)).

15      Accordingly, “contingent claims [existing as of the petition date] cannot be disallowed

16  simply because the contingency occurred postpetition.”  *Id.*  Absent some other basis to disallow a

17  claim under section 502(b), the court “must allow it.”  *Id.* (quoting *Wells Fargo Fin. Acceptance v.*

18  *Rodriguez (In re Rodriguez)*, 375 B.R. 535, 545 (9th Cir. B.A.P. 2007) and citing *Travelers Cas &*

19  *Sur. Co. of Am. V. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007)).

20                          **V.  LEGAL ANALYSIS**

21  **A.  The Fair Contemplation Test and Attorneys’ Fees Claims**

22      The determination of *when* a claim arises is central to determining whether it is subject to

23  discharge and entitled to treatment under a chapter 11 plan.  To make this determination, the Court

24  must look to federal law.  *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1000 (9th Cir.

25  2006).  “It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding

26  even if it is a cause of action that has not yet accrued.”  *Cool Fuel v. Board of Equalization (In re*

27  *Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir. 2000) (citing *In re Jensen*, 995 F.2d 925, 929 (9th

28  Cir. 1993) and other authorities).  Thus, a contingent claim may be discharged in bankruptcy, even

1   if a right to payment on that claim does not ripen until after commencement of the bankruptcy case.

2   *See In re Jensen*, 995 F.2d at 928, 931.

3         In *In re Jensen*, the Ninth Circuit Court of Appeals held that once the California

4   Department of Health Services ("Department") had discovered a serious environmental hazard on

5   the debtors' property, its claim against the debtors was ripe for filing under the Bankruptcy Code as

6   a prepetition, contingent claim, even though its CERCLA cause of action had not yet accrued. *Id*.

7   After the Jensens' bankruptcy case was closed, the Department filed a claim.  The court held it was

8   too late.  The court found that because the Department's right to payment under CERCLA

9   originated from the Jensens' "prepetition conduct," of which the Department had knowledge before

10   the petition was filed, it could be "fairly contemplate[]" that it would result in a CERCLA claim.

11   *Id*. at 930-31.

12         In *In re SNTL Corp.*, the Ninth Circuit (adopting the opinion of the Bankruptcy Appellate

13   Panel verbatim) applied the principles of *In re Jensen* to a claim for attorneys' fees incurred

14   postpetition that arose from a prepetition guarantee agreement between the debtor and a creditor.

15   571 F.3d at 830.  Pursuant to a confirmed chapter 11 joint plan of reorganization, the debtors

16   appointed a litigation trustee to prosecute certain claims, rights and causes of action, and to initiate

17   and oversee actions pertaining to the allowance and payment of claims, including objections to

18   proofs of claim filed in the case.  *Id*.  One of the proofs of claim filed in the case was that of an

19   insurance company asserting (i) a debt under a prepetition guarantee agreement, and (ii) a

20   contractual claim for attorneys' fees related to the enforcement of that debt (including fee amounts

21   that would be incurred postpetition).  *Id.* at 830, 832.

22         The litigation trustee objected to the proof of claim—both as to the guarantee debt and the

23   related claim for attorneys' fees.  With respect to the attorneys' fees specifically, the litigation

24   trustee argued (i) that the insurance company could not have an allowed claim for attorneys' fees

25   because the underlying guarantee claim was not a secured claim within the meaning of the

26   Bankruptcy Code, and (ii) that the insurance company could not recover attorneys' fees incurred at

27   any time after the petition date because the amount of such fees could not be determined or

28   calculated "as of the petition date," as contemplated by Bankruptcy Code section 502(b).  The

1    bankruptcy court sustained the objections of the litigation trustee and disallowed the insurance

2    company's claims. *Id.* at 829-833.

3        The Ninth Circuit reversed, holding that both the guarantee claim and the attorneys' fee

4    claim should be allowed. The court's conclusions with respect to the attorneys' fee issue are

5    particularly significant here. First, the court of appeals rejected the argument of the litigation

6    trustee that a claim for contractual (or statutory) attorneys' fees may be allowed in bankruptcy only

7    if the claim arises in connection with a secured claim. *In re SNTL Corp.*, 571 F.3d at 839-43, 844-

8    45.

9        Second, and most important to the present matter, the court rejected the proposition that a

10   prepetition claim for attorneys' fees incurred *postpetition* cannot be allowed. *Id.* at 843-44. The

11   court held that this would be inconsistent with the broad definition of "claim," which includes a

12   right to payment that is, as of the petition date, contingent and unliquidated. *Id.* (citing 11 U.S.C.

13   § 101(5)(A)). Thus, the court held that a prepetition right to attorneys' fees may be an allowed

14   prepetition claim, even if the fees are incurred postpetition. *Id.* The court specifically found that

15   this conclusion was "consistent with the Ninth Circuit's 'fair contemplation' test. . . :"

16       Postpetition fees can be fairly contemplated when the parties have provided for
         them in their contracts and thus are contingent claims as of the petition date. They
17       cannot be disallowed merely because they are contingent. As stated by one leading
         commentator: "In general, if the creditor incurs the attorneys' fees postpetition in
18       connection with exercising or protecting a prepetition claim that included a right to
         recover attorneys' fees, the fees will be prepetition in nature, constituting a
19       contingent prepetition obligation that became fixed postpetition when the fees were
         incurred.
20

21   *Id.* at 844 (citations omitted).

22   **B. The Exception Recognized in *Siegel and In re Ybarra.***

23       The Ninth Circuit has held on two occasions that a prepetition right to attorneys' fees

24   incurred postpetition should not be treated as a prepetition claim. *See In re Ybarra*, 424 F.3d 1018;

25   *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998). These decisions precede the

26   decision in *In re SNTL Corp.* and do not specifically refer to the fair contemplation test.

27   Nevertheless, as discussed in Section C *infra*, the Ninth Circuit has since harmonized these

28   decisions with its fair contemplation test. *See In re Castellino Villas*, 836 F.3d, at 1036-37. *See*

10

1    *also Baroni v. Wells Fargo Bank, N.A. (In re Baroni)*, 2017 WL 3014268, *5-7 (9th Cir. B.A.P.

2    July 14, 2017).

3        In *Siegel*, the debtor defaulted on two real estate loans and thereafter filed a chapter 7

4    liquidation case.  143 F.3d at 528.  Freddie Mac, the lender, filed two proofs of claim, as to which

5    no objections were filed.  *Id.*  As a result, each of those claims was deemed allowed.  *Id.* at 525; 11

6    U.S.C. § 501(a).  The debtor received a discharge of those claims, but the debtor subsequently

7    brought a state court suit (later removed to federal district court) against the lender, arguing that the

8    lender breached the deed of trust.  *See* 143 F.3d at 527-28.  The district court granted the lender

9    summary judgment, finding that determination of the rights of the parties under the loan documents

10   was *res judicata*, and awarding attorneys' fees to the lenders pursuant to those agreements.

11       On appeal, the debtor argued that the attorneys' fee claim had been discharged in his

12   chapter 7 case because (i) the lender's right to collect attorneys' fees (albeit contingent and

13   unliquidated) existed prior to the commencement of that case, under the prepetition loan

14   documents, and (ii) the discharge granted in his case applied to "all debts that arose before the

15   order for relief" in that case.  *Id.* at 531-32; *see also* 11 U.S.C. § 727(b).  The court of appeals

16   rejected this argument.

17       The court concluded it would be unfair to treat the attorneys' fee claim under the prepetition

18   loan documents as a prepetition claim (and therefore subject to the chapter 7 discharge), when the

19   debtor sought to use the very same loan documents post-discharge to pursue litigation against the

20   lender:

21           This is a case where the debtor, Siegel, had been freed from the untoward effects
         of contracts he had entered into.  Freddie Mac could not pursue him further, nor

22       could anyone else.  He, however, chose to return to the fray and use the contract as a
         weapon.  It is perfectly just, and within the purposes of bankruptcy, to allow the

23       same weapon to be used against him.

             . . .

24           [I]n fine, Siegel's decision to pursue a whole new course of litigation made him
         subject to the strictures of the attorney's fee provision.  In other words, while his

25       bankruptcy did protect him from the results of his past acts, including attorneys' fees
         associated with those acts, it did not give him carte blanche to go out and commence

26       new litigation about the contract without consequences.

27   *Id.* at 533-34.

28

11

1    In *In re Ybarra*, the Ninth Circuit addressed a similar situation. There, the debtor

2  commenced an employment discrimination suit against her employer in state court, eight months

3  before the debtor filed her chapter 7 case. 424 F.3d at 1020. The chapter 7 trustee for the debtor's

4  estate negotiated a settlement with the employer, which was approved by the bankruptcy court,

5  resulting in dismissal of the state court lawsuit. *Id.* Notwithstanding that dismissal, the debtor took

6  affirmative actions "to revive the state suit." *Id.* at 1020, 1027. The debtor claimed her cause of

7  action against the employer was exempt property, litigated the issue in bankruptcy court, and (after

8  prevailing on appeal) rejected the settlement agreement and "successfully persuaded the state court

9  to set aside the dismissal." *Id.* at 1020. The debtor lost in state court and the employer was

10  awarded attorneys' fees and costs. *Id.* at 1020-21. The employer sought leave to enforce the fee

11  and cost award notwithstanding the debtor's chapter 7 discharge, and the debtor opposed. The

12  bankruptcy court ruled in favor of the employer, but the BAP reversed.

13    Following its decision in *Siegel,* the Ninth Circuit reversed the BAP, holding that

14  postpetition attorneys' fees are not discharged when "the debtor voluntarily commences litigation

15  or otherwise voluntarily 'returns to the fray.'" *Id.* at 1026. The court explained that "whether

16  attorney fees and costs incurred through the continued prosecution of litigation initiated pre-

17  petition may be discharged depends on whether the debtor has taken affirmative post-petition

18  action to litigate a prepetition claim and has thereby risked the liability for these litigation

19  expenses." *Id.* The court of appeals concluded that by actively reviving the state suit, Ybarra

20  "returned to the fray," such that the employer's claim for attorneys' fees and costs should not be

21  treated as a prepetition debt subject to discharge.

22  **C. *In re Castellino Villas* Recognizes the Limits of *Siegel* and *In re Ybarra*.**

23    In *In re Castellino Villas*, the Ninth Circuit harmonized the fair contemplation test and its

24  decision in *In re SNTL Corp.,* on the one hand, with its decisions in *Siegel* and *In re Ybarra*, on the

25  other hand. *See In re Castellino Villas, A.K.F. LLC*, 836 F.3d at 1033-37. Although neither *Siegel*

26  nor *In re Ybarra* specifically mention the fair contemplation test, the court in *In re Castellino Villas*

27  describes those cases as instances in which the attorneys' fee award was simply not within the "fair

28  contemplation" of the parties. *Id.* at 1034.

The analysis in these cases is consistent with our fair contemplation test. When parties engage in prepetition litigation that could lead to an award of attorneys' fees, they may fairly contemplate that the prevailing party will be awarded those fees. Therefore, a creditor's contingent claim to such fees is discharged in bankruptcy, even if some fees are incurred post-petition. But when the prepetition litigation is resolved in bankruptcy so that any claim (including a contingent claim for attorneys' fees) against the debtor would be discharged, we cannot say that the debtor's affirmative action to commence what amounts to "a whole new course of litigation," *Siegel*, 143 F.3d at 534, was in the fair contemplation of the parties when the debtor filed a bankruptcy petition. Rather, the debtor's decision to eschew the fresh start provided by bankruptcy and engage in new litigation is more akin to post-petition conduct that, by definition, was not in the fair contemplation of the parties prepetition. *Cf. O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th Cir. 2000) (holding that a debtor who engages in postpetition illegal discriminatory conduct can be held liable for that conduct, even if claims for similar illegal discriminatory conduct occurring before the bankruptcy were discharged).

*In re Castellino Villas*, 836 F.3d at 1035-36.

The facts of *In re Castellino Villas* are straightforward. At the time the debtor ("Castellino") filed its chapter 11 case, its creditor ("Picerne") was in the process of foreclosing on a mechanic's lien against Castellino's property. *Id.* at 1031-32. Picerne was granted relief from the automatic stay to continue prosecuting that action, in which Castellino disputed the validity, priority, and amount of Picerne's lien. *Id.* at 1031. In connection with a chapter 11 plan, Castellino and Picerne entered into a settlement agreement. *Id.* at 1032. Among other things, the settlement agreement provided that (i) if Picerne was successful in the state court litigation, it would receive certain payments from a trust account that Castellino would fund, and (ii) the parties would mutually release one another from any and all existing claims. *Id.* The settlement did not address attorneys' fees. *Id.* The settlement was approved, the plan modified to include the agreed-upon terms, the plan confirmed, and Picerne's prepetition claims discharged under the plan. *Id.*

The parties thereafter completed the state court litigation, and Picerne won. *Id.* Based on its victory, Picerne sought an attorneys' fee award under its prepetition agreement with Castellino, but the bankruptcy court denied its request. *Id.* The bankruptcy court held that Picerne's claim for attorneys' fees (i) existed on the petition date as a contingent and unliquidated claim and was discharged or (ii) was released under the parties' settlement agreement. Picerne appealed.

Relying on *In re Ybarra*, Picerne argued on appeal that by litigating the state court action after obtaining a discharge, Castellino "returned to the fray" and opened itself up to liability for

1    attorneys' fees incurred after the discharge.  *Id.* at 1033.  Specifically, Picerne argued that where a

2    debtor continues to litigate a prepetition claim after discharge, and takes any affirmative steps

3    beyond what is necessary to extricate itself from the litigation, the debtor has chosen to "return to

4    the fray."  *Id.* at 1036.  Picerne cited the fact that more than seeking to extricate itself from the state

5    court litigation, Castellino brought a motion for summary judgment, opposed Picerne's motion for

6    summary judgment, took party and nonparty discovery, and made a request for attorneys' fees.

7          The Ninth Circuit rejected Picerne's argument.  The court of appeals found that because

8    Picerne was relying on an attorneys' fee provision in a prepetition agreement, and because Picerne

9    had commenced the litigation prepetition, Picerne's contingent claim for attorneys' fees arose

10   before both the filing of Castellino's bankruptcy case and confirmation of Castellino's chapter 11

11   plan.  *Id.*  "Further, the preconfirmation settlement agreement between Picerne and Castellino

12   required the parties to complete the state court litigation.  Under these circumstances, Picerne could

13   fairly and reasonably contemplate that it would incur attorneys' fees associated with the state court

14   litigation and would have a claim for attorneys' fees under the agreement if it prevailed."  *Id.*

15         The court of appeals expressly "decline[d] to adopt Picerne's expanded reading of *Ybarra*

16   *and Siegel,* which is inconsistent with our fair contemplation test."  *Id.*

17         Contrary to Picerne's argument, *Ybarra* and *Siegel* are not implicated here.
     Unlike the debtors in those cases, Castellino was not relieved of liability under its
18   agreement with Picerne and given a fresh start by its discharge in bankruptcy.
     Rather, the parties agreed that Picerne's action against Castellino would continue
19   after discharge.  Indeed, in order to obtain Picerne's agreement to withdraw its
     objections to the plan of reorganization, Castellino and Picerne agreed to litigate
20   Picerne's mechanic's lien claim to conclusion, and the terms of the plan of
     reorganization were conditioned on the results of the litigation.  Nor did Castellino
21   "pursue a whole new course of litigation," after receiving a discharge.

22   Id.  As the court explained further, "[T]he pertinent question is whether the right to obtain

23   attorneys' fees in the litigation is within the fair contemplation of the parties, and Picerne provides

24   no reason why it would not have fairly contemplated that the parties would proceed with litigation

25   that had not been resolved in bankruptcy."  *Id.* at 1037.

26   **D.  Application of the Law to the Facts of the Case.**

27         The outcome of the present dispute is controlled by *In re SNTL Corp.* and *In re Castellino.*

28   As in those cases, OneWest held a contingent and unliquidated claim for attorneys' fees under its

1  prepetition loan documents with Allana, at the time she filed her chapter 11 petition.  OneWest's

2  claim for attorneys' fees became liquidated and non-contingent following confirmation of her Plan,

3  which is when the attorneys' fees were incurred and a fee award granted.  But this does not alter the

4  fact that the claim arose from a prepetition agreement and existed before confirmation of the Plan

5  (albeit contingent and unliquidated).  *See In re Castellino Villas*, 836 F.3d at 1033-36; *In re SNTL*

6  *Corp.*, 571 F.3d at 843-44.  As such, OneWest's claim for attorneys' fees is a claim subject to

7  discharge under the Plan, pursuant to Bankruptcy Code section 1141(d)(1)(A).

8        That Allana's objection to the OneWest proof of claim was litigated after entry of the order

9  confirming the Plan is of no moment.  The Plan (which was integrated with the disclosure

10  statement) put OneWest on notice that Allana objected to the OneWest claim, indicated that the

11  claim would be litigated after confirmation of the Plan, and specifically provided for alternative

12  treatment under the Plan, depending on the outcome of the litigation.  Under the Plan, Allana must

13  make payments into a trust account in amounts specified in the Plan.  If the Court sustained

14  Allana's objection, and disallowed the OneWest claim, the Plan provides that the money would be

15  returned to Allana.  If the Court denied the objection, and allowed the OneWest claim, the money

16  would go to OneWest, as would future payments in accordance with the terms of the Plan.

17        In other words, OneWest could fairly and reasonably contemplate that it would incur

18  attorneys' fees associated with the enforcement of its claim in Allana's case, and that it would have

19  a claim for such attorneys' fees under its prepetition loan documents, at the time the case was

20  commenced.  Further, OneWest could fairly and reasonably contemplate prior to plan confirmation

21  that it would incur such fees after plan confirmation because the Plan: (i) advised of Allana's

22  objection to the OneWest claim, (ii) contemplated that the allowance of the claim would be

23  litigated after plan confirmation, and (iii) provided for alternative treatment depending on the

24  outcome of that litigation.

25        These facts and circumstances are similar to those in *In re SNTL Corp.* and *In re Castellino.*

26  In *In re SNTL Corp.,* the plan contemplated that a plan trustee could prosecute claims objections

27  and other causes of action after confirmation of the plan.  *In re SNTL Corp.*, 571 F.3d at 830, 832.

28  Although the litigation giving rise to the fees occurred after plan confirmation—and after the

1  debtor was discharged under the plan—the court of appeals found that the claim for attorneys' fees

2  was a prepetition claim because it arose (i) under the parties' prepetition agreement and (ii)

3  therefore existed as of the debtor's petition date as a contingent and unliquidated claim.  *Id.* at 843-

4  44.

5      Similarly, in *In re Castellino Villas,* the plan contemplated that the parties would litigate the

6  priority of the creditor's lien in a state court action and provided for alternative treatment

7  depending on the outcome of the litigation.  *In re Castellino Villas*, 836 F.3d at 1032.  Although the

8  plan in that case did not address the issue of attorneys' fees—as is true here—the Ninth Circuit

9  concluded that prior to plan confirmation, the creditor "could fairly and reasonably contemplate

10  that it would incur attorneys' fees associated with the state court litigation and would have a claim

11  for attorneys' fees under the agreement if it prevailed." *Id.* at 1036.  The same result should obtain

12  here, where the plan put OneWest on notice that the litigation over claim allowance would occur

13  post-confirmation.[10]

14      Unlike in *In re Castellino Villas,* there is no settlement agreement here under which the

15  parties agreed that the claims litigation would occur post-confirmation. The procedure for litigating

16  allowance of the claim is simply baked into the Plan.  But this difference is not significant to the

17  analysis.  First, it is well-established that a chapter 11 plan is itself a contract between a debtor and

18  its creditors.  *See Hillis Motors v. Hawaii Auto. Dealers' Ass'n (In re Hillis Motors)*, 997 F.2d 581,

19  588 (9th Cir. 1993);  *Knupfer v. Wolfberg (In re Wolfberg),* 255 B.R. 879 (9th Cir. B.A.P.  2000).

20  Second, the plan is deemed binding on all creditors, regardless of whether they are impaired under

21

22  [10]  The different results in the chapter 11 cases of *In re SNTL Corp.* and *In re Castellino Villas*, on
the one hand, and the chapter 7 cases of *Siegel* and *In re Ybarra,* on the other hand, reflect

23  structural differences between those chapters.  Under chapter 11, a plan may provide for "the
retention and enforcement by the debtor, the trustee, or by a representative of the estate appointed

24  for such purpose, of any such claim or interest," 11 U.S.C. § 1123(b)(3)(B), or "any other
appropriate provision not inconsistent with the applicable provisions of this title."  11 U.S.C.

25  § 1123(b)(6).  Thus, it is not uncommon for a chapter 11 plan to defer the process of objecting to
proofs of claim or pursuing affirmative causes of action until the post-confirmation period, in order

26  to expedite the Debtor's emergence from chapter 11 and minimize administrative fees and costs.
There are no analogous provisions and no analogous process in chapter 7.

27

28

1  the plan or accept the plan. *See* 11 U.S.C. § 1141(a). Third, irrespective of the foregoing, the Plan

2  undeniably put OneWest on notice that allowance of its claim would be adjudicated after

3  confirmation of the Plan.

4        OneWest (and the similarly situated lender, Wells Fargo) have argued that Allana "returned

5  to the fray" within the meaning of *Siegel* and *In re Ybarra,* by pursuing litigation against OneWest

6  post-confirmation. But as the court of appeals concluded in *In re Castellino,* this Court concludes

7  those cases "are not implicated here." 836 F.3d at 1036. The court in *Siegel* held that the debtor

8  "returned to the fray" after (i) the debtor failed to object to the lender's claim during his chapter 7

9  case, (ii) the claim was deemed allowed, (iii) the debtor obtained a discharge of all liabilities under

10  his agreements with the lender, but (iv) then "returned to the fray" by initiating new litigation

11  against the lender based on those documents. 143 F.3d at 533. Here, the litigation generating

12  attorneys' fees was not initiated after the claims of the creditor were allowed and thereafter

13  discharged in the bankruptcy case. The litigation generating the fees is over the very allowance of

14  the creditor's claim in the bankruptcy case and, as a result, the treatment to which it is entitled

15  under Allana's confirmed chapter 11 plan. Moreover, because this is an individual chapter 11 case,

16  there was no discharge upon confirmation and a discharge has yet to issue. *See* 11 U.S.C.

17  § 1141(d)(5). These circumstances do not raise the sort of fairness concerns raised in *Siegel.*

18        The facts of the instant case are even farther afield of *In re Ybarra.* In that case the debtor

19  took affirmative steps postpetition to revive a prepetition cause of action against her employer,

20  after (i) the chapter 7 trustee for her estate had negotiated a settlement of it, (ii) the court had

21  approved the settlement, and (iii) the state court had dismissed the debtor's prepetition lawsuit.

22  424 F.3d at 1020. Under those circumstances, the postpetition attorneys' fees incurred by the

23  employer defending the suit were simply not within the fair contemplation of the parties at the time

24  the case was filed (i.e., the cleavage point for claims subject to discharge under chapter 7), *In re*

25  *Castellino Villas*, 836 F.3d at 1034, and permitting the discharge of those fees would have been

26  unfair. Nothing approaching those circumstances is present in the instant case. Prior to pursuing

27  her litigation against OneWest, Allana did nothing (nor allowed anything to happen) amounting to

28  a resolution or adjudication of OneWest's claims.

1    The allowance and disallowance of claims is a core bankruptcy matter.  *See* 28 U.S.C.

2  §157(b)(2).  That OneWest's claim would be challenged in the bankruptcy case, and would

3  generate attorneys' fees, for which it might have a claim under its loan documents, was well within

4  the fair contemplation of the parties both (i) at the petition date and (ii) prior to confirmation of the

5  Plan (i.e., the cleavage point for claims subject to discharge under chapter 11).  Moreover, nothing

6  in the circumstances presented suggests that it otherwise would be unfair to permit OneWest's pre-

7  confirmation contingent and unliquidated claim for attorneys' fees be treated and discharged under

8  the Plan.  Indeed, because these fees were foreseeable, it was incumbent on OneWest to raise any

9  concerns it had about the treatment and discharge of that claim under the Plan at the time the Plan

10  was confirmed.[11]

11    It appears that OneWest would have this Court conclude that literally any litigation

12  commenced postpetition and continued post-confirmation is a "whole new course of litigation,"

13  where it pertains to a claim that will be discharged under a plan.  But the argument ignores the

14  particular meaning given those terms in *Siegel* and *In re Ybarra*, and the particular circumstances

15  of those cases.  Perhaps most importantly, such a conclusion would eviscerate the fair

16  contemplation test, as that test has been applied to contractual and statutory attorneys' fees by the

17  Ninth Circuit.  If such an argument were correct, then no attorneys' fee claim that becomes

18  liquidated and non-contingent postpetition or post-confirmation in a chapter 11 case would ever be

19  discharged—a result clearly at odds with the Ninth Circuit's holdings in *In re SNTL Corp.* and *In re*

20  *Castellino Villas.*

21  **E.    Reasonableness of the Fees Requested**

22    In its initial Fee Motion, OneWest requested attorneys' fees in the amount of $662,937.

23  This amount included fees incurred in the main bankruptcy case as well as fees incurred in this

24

---

25  [11]  In fact, it appears OneWest may have foreseen that it would incur attorneys' fees defending its
claim as its supplemental objection to confirmation of Allana's Plan complained that the Plan did
26  not adequately provide for amounts due to OneWest under section 506(b).  Case Dkt. 401.  In
pertinent part, where a secured creditor is oversecured, section 506(b) allows reasonable fees to be
27  included in the amount of the allowed claim.  11 U.S.C. § 506(b).  OneWest's oversecured status
did not appear to be in dispute at the time the Plan was confirmed.

28

1  adversary proceeding.  Allana opposed the Fee Motion, principally rearguing the merits of her

2  claims, but also asserting that OneWest was required to submit detailed billing statements to

3  establish the reasonableness of its fees.  Adv. Dkt. 354.  At the initial hearing on the Fee Motion,

4  the court determined that OneWest was not required as a matter of law to submit detailed billing

5  invoices but was required to remove the attorneys' fees incurred in the main bankruptcy case from

6  the fees sought in this adversary proceeding.  OneWest filed its supplemental brief in support of the

7  Fee Motion (the "Supplemental Brief") seeking attorneys' fees of $498,113 for the two and one-

8  half years this adversary proceeding has been pending.  Adv. Dkt. 364.  OneWest included a

9  detailed declaration of Brian H. Newman (the "Newman Declaration") breaking these fees into ten

10  categories of services provided, and offered a detailed narrative for each category and a subtotal of

11  fees expended in each category, as well as biographical narratives and billing rates for the

12  professionals billing in these categories.  Allana filed a supplemental opposition (the

13  "Supplemental Opposition"), again arguing that OneWest was required to submit detail billing

14  invoices and that OneWest had failed to prove its fees were reasonable.  Adv. Dkt. 366.  At a

15  preliminary hearing, the court determined that OneWest was not required as a matter of law to

16  submit detailed billing invoices.  *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827

17  (9th Cir. 2009) quoting *Martino v. Denevi*, 182 Cal. App. 3d 553, 558 (1986).  While OneWest is

18  not barred as a matter of law from recovering its attorneys' fees simply because it did not provide

19  detailed billing invoices in support of its fees, the court concluded that a review of those invoices

20  would assist the court in determining the reasonableness of those fees.  Additionally, in an opinion

21  issued after that interim hearing on the Fee Motion, the Ninth Circuit held that "the Due Process

22  Clause requires that opposing counsel have access to . . . timesheets relied on to support [a] fee

23  order." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545 (9th Cir. 2016).  Therefore, the

24  court required OneWest to submit under seal detailed billing invoices, redacted only to the extent

25  absolutely necessary to protect information covered by the attorney-client privilege or the work

26  product doctrine (the "Billing Records").  OneWest filed and served Billing Records on Allana and

27  increased the amount of fees requested to $567,260 to include fees incurred in the adversary and on

28  appeal since the filing of the Fee Motion.  Adv. Dkt. 388.  Allana renewed her objections to the

1   original amount requested and asserted objections to the newly requested fees and requested

2   additional time to retain an expert to analyze the fees.  Adv. Dkt. 390.  OneWest submitted a

3   second supplemental reply in response to those arguments.  Adv. Dkt. 391.

4        The terms of the parties' prepetition deed of trust as well as California law and federal law

5   all require that OneWest's attorneys' fees be reasonable as a condition of being recoverable.[12]

6   OneWest bears the burden of proving that the fees sought are reasonable.  *Atwood v. Chase*

7   *Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 (9th Cir. B.A.P. 2003); *Center for*

8   *Biological Diversity v. Cty. of San Bernardino,* 188 Cal. App. 4th 603, 615 (2010).  Both California

9   and the Ninth Circuit customarily assess the reasonableness of attorneys' fees utilizing the

10  "lodestar" approach where the number of hours reasonably expended is multiplied by a reasonable

11  hourly rate.  *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 598 (9th

12  Cir. 2006); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001).  Application of the lodestar method

13  is not mandatory in all bankruptcy cases, however.  *Id.  See also PLCM Grp. v. Drexler*, 22 Cal. 4th

14  1084, 1095 (2000) (noting that trial courts should not engage in a "meticulous analysis" of the

15  services rendered such that fee award litigation ends up "dwarfing the case in chief").

16  Additionally, section 506(b) requires the court to consider whether the oversecured creditor

17       took the kinds of actions that similarly situated creditors might reasonably conclude
18       should be taken, or whether such actions and fees were so clearly outside the range
         as to be deemed unreasonable. The bankruptcy court should inquire whether,

19  _____

20  [12]  The deed of trust provides that Allana agrees to pay "reasonable costs of collection, expenses,
     and attorneys' fees paid or incurred in connection with collection, enforcement or interpretation of

21  the Note or this Deed of Trust . . . "  Adv. Dkt. 345-1 at 14.  Although Allana alleges numerous
     federal statutory claims, the gravamen of this adversary proceeding is the enforceability of the note

22  and deed of trust, which are governed by California law.  Because California law governs the rule
     of decision, it also governs the fee award.  *Krommenhoek v. A-Mark Precious Metals, Inc. (In re*

23  *Bybee)*, 945 F.2d 309, 315-16 (9th Cir. 1991) (fee award to successful defendant in trustee's
     fraudulent transfer suit governed by Idaho law).  The parties also are bound by the terms of

24  Allana's confirmed Plan, which provides that OneWest's Class Four claim in the amount of
     $1,860,994 is secured by real property that Allana asserts has a liquidation value of  $2,275,000,

25  making OneWest an over-secured creditor.  Case Dkt.  376 at 25 & Exh. 3.  Section 506(b) of the
     Bankruptcy Code expressly requires that only "reasonable" attorneys' fees be included in the

26  allowed amount of an over-secured claim.  11 U.S.C. § 506(b).

27

28

1   considering all relevant factors including duplication, the creditor reasonably
    believed that the services employed were necessary to protect his interests in the
2   debtor's property.

3   *Dalessio v. Pauchon (In re Dalessio)*, 74 B.R. 721, 723 (9th Cir. B.A.P. 1987).

4       OneWest provides evidence that the normal billing rates for the four attorneys principally

5   responsible for this adversary proceeding are $490 - $690 per hour but that they billed at

6   discounted rates of $380 - $545 per hour.  Adv. Dkt. 364.  The court notes that the attorney who

7   has routinely appeared on these matters over the last eighteen months, Brian Newman, has the

8   billing rate of $380, that this court routinely approves fee applications in which counsel in this

9   district have billing rates higher than $380 - $545 per hour and that Allana's counsel in both the

10  bankruptcy case and this adversary proceeding have billing rates of at least $500 per hour.  Case

11  Dkt. 247 and Adv. Dkt. 739.  OneWest's counsel billed 1,428.9 hours in the adversary for which it

12  seeks $567,260 for a blended rate of $396 per hour.  Adv. Dkt. 388 and Billing Records attached

13  thereto.  The hourly rates charged by OneWest's counsel, and the blended rate for fees incurred in

14  this proceeding, thus are reasonable in comparison with the prevailing market rates in this forum.

15  *See Stine v. Flynn (In re Stine)*, 254 B.R. 244, 252 (9th Cir. B.A.P. 2000) citing *Blum v. Stenson*,

16  465 U.S. 886, 895 (1984) ("reasonable fees are to be calculated according to prevailing market

17  rates"); *PLCM Grp.*, 22 Cal. 4th at 1095 ("The reasonable hourly rate is that prevailing in the

18  community for similar work").

19      In her Supplemental Opposition, Allana argues that OneWest's counsel performed in excess

20  of a 1000 hours of work in this adversary proceeding which she contends is unreasonable.  Adv.

21  Dkt. 366.  In response, OneWest argues that much of its fees can be attributed to the litigation

22  tactics pursued by Allana.  Adv. Dkt. 367.  As a threshold matter, OneWest's fees are all

23  attributable to defending against Allana's affirmative challenges to whether OneWest has standing

24  to enforce the note and deed of trust and whether it had any interest at all in the Property.  Under

25  the confirmed Plan, unless OneWest prevails in this adversary proceeding it will not receive any of

26  the Plan distributions made into the Class Four Reserve Account.  Case Dkt. 376 at 19, 24.  This is

27  not a case in which an over-secured creditor "harasses and opposes the debtor at every stage of the

28  bankruptcy proceeding" knowing that its over-secured status essentially gives it "a blank check to

1   incur fees and costs which will automatically be reimbursed out of its collateral" -- the type of

2   overreaching the reasonableness requirement of section 506(b) is designed to prevent. *Dalessio,* 74

3   B.R. at 723.

4        OneWest incurred $34,600 in connection with three appeals by Allana from interlocutory

5   orders. The District Court dismissed each of these three appeals as interlocutory orders that are not

6   immediately appealable as a matter of right and admonished Allana "that if she repeats this

7   procedure a fourth time, the [District] Court will be inclined to entertain a motion for sanctions."

8   Adv. Dkt. 174, 217. The Newman Declaration details that in connection with these frivolous

9   appeals OneWest was required to file two motions to dismiss, an appellate brief, an opposition to

10  Allana's motion for reconsideration and to appear at a hearing. Adv. Dkt. 364 at 6. Allana

11  complains that these filings "were routine and relied on established case law" such that the number

12  of hours expended was unreasonable. Adv. Dkt. 366 at 4. Allana's objection misses the point: her

13  appeals from interlocutory orders, without seeking leave to appeal, were frivolous and represent an

14  ill-considered, scorched earth litigation tactic which necessarily caused OneWest to incur fees in

15  response to Allana's decision to appeal from interlocutory orders without seeking leave to do so.

16       Each of Allana's appeals from interlocutory orders was accompanied by a barrage of

17  motions in the bankruptcy court seeking reconsideration of the orders appealed from, motions for

18  stays pending appeal, motions for relief from orders (and even motions to reconsider orders

19  denying motions for relief from orders) and applications for orders shortening time on some of

20  those motions. Adv. Dkt. 75, 76, 176, 178, 264, 268, 320. Each of these motions caused OneWest

21  to incur attorneys' fees and it was not unreasonable for OneWest to do so.

22       Allana also responded to OneWest's motion for summary judgment on the Complaint by

23  filing a First Amended Complaint (the "FAC") (purporting to add two new defendants and two new

24  causes of action) without leave of court or OneWest's consent. Adv. Dkt. 106. In his order

25  granting OneWest's motion for summary judgment, Judge Ahart expressly found that the FAC was

26  not authorized under Rule 15(a)(2) of the Federal Rules of Civil Procedure. Adv. Dkt. 129, ¶12. In

27  contravention of this ruling, Allana requested and obtained entry of defaults against OneWest and

28  the two new defendants named in the FAC. Adv. Dkt. 135 -137, 140-142, 146-148. OneWest

1    incurred unnecessary legal fees to object to the request for entry of default and to move to set aside

2    the default entered against it, which Allana opposed.  Adv. Dkt. 139, 152, 163, 164, 165.  Judge

3    Tighe granted OneWest's motion and noted in her ruling that Allana's efforts to obtain entry of

4    default was "contrary to both the spirit and specific language of [Judge Ahart's] MSJ Order" and

5    that Allana would "not be prejudiced by this adversary being determined on its merits, rather than

6    by the game of 'gotcha' that the Debtor is trying to play."  Adv. Dkt. 168.  Undeterred by adverse

7    rulings regarding the FAC by Judge Ahart and Judge Tighe, and with a third judicial officer now

8    assigned to this adversary proceeding, Allana continued to prosecute her FAC, seeking a default

9    judgment against the two improperly named defendants, relief which OneWest chose to oppose.

10    Adv. Dkt. 200, 208.  This court denied Allana's ill-considered motion for default judgment, set

11    aside the defaults entered against the new defendants and ordered Allana's improper FAC stricken.

12    Adv. Dkt. 236.  The Newman Declaration details that OneWest incurred $16,543 in fees in

13    connection with Allana's improper FAC which are not unreasonable in light of Allana's insistence

14    on prosecuting an improper amended complaint despite adverse rulings from three different judicial

15    officers regarding the filing of that complaint.

16            The Newman Declaration also details that OneWest incurred $46,665 to resolve its

17    Counterclaim, which includes its successful motion for summary judgment on that Counterclaim.

18    OneWest contends, and Allana presents no evidence in contravention of these contentions, that

19    OneWest asked Allana to stipulate to dismissal of the Counterclaim against her, that she refused

20    causing OneWest to file a motion to dismiss its own Counterclaim, which Allana opposed on the

21    grounds that resolution of the Counterclaim (the only remaining claim in this proceeding at that

22    point) would be premature.  Adv. Dkt. 364, 186, 190, 192, 193.  Because Allana fought dismissal

23    of the Counterclaim, OneWest was left with little choice but to file a motion for summary judgment

24    on that Counterclaim, which Allana opposed by filing both a motion to strike the motion for

25    summary judgment and an opposition.  Adv. Dkt. 201, 251.  OneWest's fees incurred to prevail on

26    its Counterclaim are not unreasonable, especially where the uncontroverted evidence establishes

27    that Allana refused to consent to the dismissal of the Counterclaim.

28

Not all of the fees prayed for are compensable, however.  In its Fee Motion (which includes fees incurred in the main bankruptcy case as well as this adversary proceeding), OneWest describes $53,069 in fees it incurred in connection with "Plan Compliance" – OneWest's efforts to determine whether Allana was making the requisite Plan payments into a Class Four reserve account for the secured claim of OneWest.  Adv. Dkt. 345, at 7-8.  After OneWest supposedly limited its fees to those incurred in the adversary, as opposed to the main bankruptcy case, some portion of the fees it incurred in connection with "Plan Compliance" remained, described as follows:

> OneWest also served subpoenas in the Adversary Proceeding on Wells Fargo (the bank at which the Reserve Account is maintained), Allana Baroni, Baroni Enterprises (Baroni's corporate entity, from which she is making the payments into the Reserve Account), and James Baroni (who is Allana's husband, and a co-borrower on the Note and Deed of Trust).

Adv. Dkt. 364, at 3:16-21.

Discovery to determine whether Allana was in default under the Plan should have been conducted in the main case as Allana's compliance with the Plan is unrelated to the issues in the adversary proceeding.  Additionally, based on the detailed time entries in the Billing Records, much of this discovery was sought under Federal Rule of Bankruptcy Procedure 2004 yet billed in the adversary proceeding.  Once an adversary proceeding is pending, the use of Rule 2004 as a discovery mechanism related to the issues in the adversary proceeding is improper.  *In re Dinubilo*, 177 B.R. 932, 941 (E.D. Cal. 1993); *In re Enron Corp.*, 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002) ("Courts have imposed limits on the use of Rule 2004 examinations . . . under the well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004").  To the extent OneWest sought information regarding "Plan Compliance" through Rule 2004 motions, those services related to the main case and are not compensable in this adversary proceeding.  To the extent OneWest employed Rule 2004 to discover information related to the adversary, it employed a prohibited procedural mechanism and therefore those fees are not compensable.  The court's review of the Billing Records filed under seal indicates OneWest incurred $27,654.50 in

fees in connection with "Plan Compliance" discovery and Rule 2004 discovery.  These fees will be disallowed.  Additionally, OneWest includes $1,282.50 in fees incurred to prepare a motion to dismiss the underlying bankruptcy case.  As these fees do not relate to the adversary proceeding, they will be disallowed.  A chart detailing the specific fees disallowed is attached as an addendum to this decision.

It is apparent that during the two and one-half years that this adversary proceeding has been pending OneWest has suffered considerable legal expense as a result of Allana's aggressive litigation tactics, ultimately prevailing on both Allana's Complaint and OneWest's Counterclaim and on three frivolous appeals.  Except as noted above and in the attached addendum, the Newman Declaration and the Billing Records filed under seal are sufficiently detailed to establish the reasonableness of the services rendered.  The billing rates charged by OneWest's counsel, as well as the blended rate, are well within the reasonable prevailing market rates.  As such, OneWest is entitled to fees in the amount of $538,323.

## VI. CONCLUSION

For all of the foregoing reasons, the Court holds that the attorneys' fee award in favor of OneWest in this adversary proceeding, in the amount of $538,323, shall be treated as a prepetition claim, subject to treatment and discharge under Allana's confirmed chapter 11 plan.

###

**ADDENDUM**

| | | FEES RELATED TO "PLAN COMPLIANCE" AND RULE 2004 DISCOVERY | | | | |
|---|---|---|---|---|---|---|
| Attorney | Billing Rate | Date (all dates are 2014) | Time | Page of Billing Records Filed Under Seal | Services Related to | Amount Billed |
| BN | $380 | 5/2 | .4 | 13 | Rule 2004 Subpoena to James Baroni | $152 |
| BN | $380 | 6/16 | .7 | 14 | Rule 2004 Subpoena to James Baroni | $266 |
| AR | $475 | 5/22 | .3 | 19 | Rule 2004 discovery to James Baroni | $142.5 |
| AR | | 5/29 | .3 | 20 | Rule 2004 discovery to James Baroni | $142.5 |
| KS | $545 | 6/2 | .6 | 20 | Rule 2004 exam of Allana Baroni | $327 |
| BN | $380 | 6/5 | .3 | 21 | Rule 2004 exam | $114 |
| AR | $475 | 6/6 | 1.7 | 21 | Rule 2004 exam | $807.50 |
| AR | $475 | 6/9 - 6/11 | 5.8 | 22 | Rule 2004 exam | $2,755 |
| KS | $545 | 6/10 | .4 | 22 | Rule 2004 exam | $218 |
| AR | $475 | 6/13 | 1.3 | 23 | Rule 2004 exam | $617.50 |
| AR | $475 | 6/18 | .5 | 24 | Rule 2004 exam | $237.50 |
| AR | $475 | 6/24 & 6/26 | .5 | 25 | Rule 2004 exam | $237.50 |
| KS | $545 | 6/26, 6/27 | 2.0 | 26 | Rule 2004 exam | $1,090 |
| AR | $475 | 6/27 | .8 | 26 | Rule 2004 exam | $380 |
| AR | $475 | 7/1, 7/7 | .4 | 27 | Rule 2004 exam | $190 |
| KS | $545 | 7/7 | .9 | 27 | Rule 2004 exam | $490.50 |
| AR | $475 | 7/1, 7/7 | .4 | 27 | Rule 2004 exam | $190 |
| KS | $545 | 7/10 | .2 | 28 | Rule 2004 exam | $109 |
| AR | $475 | 7/10 | 4.5 | 28 | Rule 2004 exam | $2,137.50 |
| AR | $475 | 7/24 | .6 | 31 | Motion for protective order / Motion to quash re Rule 2004 discovery | $285 |
| KS | $545 | 7/29 | .6 | 31 | Motion to quash Rule 2004 related subpoena to Wells Fargo | $327 |
| AR | $475 | 7/30 | .2 | 32 | Motion to quash Rule 2004 related subpoena to Wells Fargo | $95 |
| KS | $545 | 7/30-7/31 | 1.2 | 32 | Motion to quash / Motion for protective order re Rule 2004 subpoena to Wells Fargo | $654 |
| BN | $380 | 7/30- | 1.7 | 32 | Motion to quash / Motion for | $646 |

| FEES RELATED TO "PLAN COMPLIANCE" AND RULE 2004 DISCOVERY | | | | | | |
|---|---|---|---|---|---|---|
| Attorney | Billing Rate | Date (all dates are 2014) | Time | Page of Billing Records Filed Under Seal | Services Related to | Amount Billed |
|  |  | 7/31 |  |  | protective order re Rule 2004 subpoena to Wells Fargo |  |
| BN | $380 | 8/6, 8/12 | 7.4 | 33 | Motion to quash / Motion for protective order re Rule 2004 subpoena to Wells Fargo | $2,812 |
| KS | $545 | 8/7-8/8, 8/13 | 1.5 | 33 | Motion to quash / Motion for protective order re Rule 2004 subpoena to Wells Fargo | $817.50 |
| BN | $380 | 8/15, 8/18, 8/20-8/21, 8/26 | 4.3 | 34 | Motion to quash / Motion for protective order re Rule 2004 subpoena to Wells Fargo | $1,634 |
| KS | $545 | 9/2 | .2 | 35 | Motion to compel Rule 2004 discovery | $109 |
| BN | $380 | 9/2, 9/3 | 3.5 | 35 | Motion to compel Rule 2004 discovery & Motion to quash / Motion for protective order re Rule 2004  subpoena to Wells Fargo | $1,330 |
| GJ | $455 | 9/3 | .2 | 35 | Motion to compel Rule 2004 discovery | $91 |
| KS | $545 | 9/4-9/5 | 1.1 | 36 | Motion to compel Rule 2004 discovery | $599.50 |
| GJ | $455 | 9/5 | .4 | 36 | Motion to compel Rule 2004 discovery | $182 |
| BN | $380 | 9/10 | .9 | 36 | Motion to compel Rule 2004 discovery | $342 |
| BN | $380 | 9/11-9/12, 9/15, 9/17 | 6.8 | 37 | Motion to compel Rule 2004 discovery & Motion to quash / Motion for protective order re Rule 2004  subpoena to Wells Fargo | $2,584 |
| KS | $545 | 9/16-9/17 | 1.1 | 37 | Motion to quash / Motion for protective order re Rule 2004 subpoena to Wells Fargo & production of documents by Wells Fargo | $599.50 |
| GJ | $455 | 9/23-9/24 | 4.0 | 38 | Motion to compel Rule 2004 discovery | $1,820 |

| FEES RELATED TO "PLAN COMPLIANCE" AND RULE 2004 DISCOVERY | | | | | | |
|---|---|---|---|---|---|---|
| Attorney | Billing Rate | Date (all dates are 2014) | Time | Page of Billing Records Filed Under Seal | Services Related to | Amount Billed |
| BN | $380 | 9/23 | .6 | 38 | Motion to compel Rule 2004 discovery | $228 |
| KS | $545 | 9/24 | .9 | 38 | Motion to compel Rule 2004 discovery | $490.50 |
| GJ | $455 | 9/24 | 1.5 | 39 | Motion to compel Rule 2004 discovery | $682.50 |
| BN | $380 | 9/26, 10/1 | .6 | 39 | Production of documents by Wells Fargo | $228 |
| BN | $380 | 10/2 | 1.3 | 40 | Production of documents by Wells Fargo | $494 |
| | | | | | Total | $27,654.50 |

| FEES RELATED TO A MOTION TO DISMISS THE BANKRUPTCY CASE | | | | | | |
|---|---|---|---|---|---|---|
| Attorney | Billing Rate | Date | Time | Page of Billing Records Filed Under Seal | Services Related to | Amount Billed |
| AR | $475 | 7/8 | 2.7 | 28 | Motion to dismiss bankruptcy case | $1,282.50 |

Date: September 29, 2017

_Martin R. Barash_

Martin R Barash
United States Bankruptcy Judge